Welcome Traci Wills!

## Circuit Court Records
### Web Search

**CASE DISPLAY**

| Washington County, AR | Value | Order |
|---|---|---|
| Last Name | HUNTER | 1 |
| First Name | MARK | 2 |
| Party | ALL PARTIES | 3 |
| Name (1) | HUNTER, MARK | 4 |
| Case Number | 09-CV-000261 | 5 |

| Case Number | Case Title | Status | Filing Type | Filing Date | Division | Comments |
|---|---|---|---|---|---|---|
| **09-CV-000261** | JARED DAVIS VS MARK HUNTER | CLDN 03/09/2010 | OTHER - TORTS | 1/20/2009 | 4 | |

**Events**

| Party Name | Event Type | Event Date |
|---|---|---|
| ALL PARTIES | JURY TRIAL | 9/21/2010 9:00:00 AM |
| ALL PARTIES | HEARING | 9/18/2009 1:30:00 PM |
| HUNTER, MARK | SUMMONS SERVED | 1/26/2009 9:00:00 AM |

**Parties, Attorneys, Charges and Costs**

| Party Name | Type | Address | City/State/Zip | Arrest Tracking # | Arrest Date | Birth Date | Death Date | Sex | Race | Party Status |
|---|---|---|---|---|---|---|---|---|---|---|
| DAVIS, JARED | PLAINTIFF | *Access Denied* | | | | *Access Denied* | | | | CLDN |

**Attorneys**

| Attorney Name | Address | City/State/Zip |
|---|---|---|
| COX, S LANCE | P O BOX 878 | FAYETTEVILLE, AR 72702-0878 |
| UNASSIGNED, UNASSIGNED | UNASSIGNED UNASSIGNED | |
| WALES, JASON H | P O BOX 8370 | FAYETTEVILLE, AR 72703 |

| Party Name | Type | Address | City/State/Zip | Arrest Tracking # | Arrest Date | Birth Date | Death Date | Sex | Race | Party Status |
|---|---|---|---|---|---|---|---|---|---|---|
| J2R LLC | PLAINTIFF | *Access Denied* | | | | *Access Denied* | | | | CLDN |

**Attorneys**

| Attorney Name | Address | City/State/Zip |
|---|---|---|
| COX, S LANCE | P O BOX 878 | FAYETTEVILLE, AR 72702-0878 |
| SCOTT, JOHN M | 211 EAST DICKSON ST | FAYETTEVILLE, AR 72701 |
| UNASSIGNED, UNASSIGNED | UNASSIGNED UNASSIGNED | |
| WALES, JASON H | P O BOX 8370 | FAYETTEVILLE, AR 72703 |

| Party Name | Type | Address | City/State/Zip | Arrest Tracking # | Arrest Date | Birth Date | Death Date | Sex | Race | Party Status |
|---|---|---|---|---|---|---|---|---|---|---|
| HUNTER, MARK | DEFENDANT | *Access Denied* | | | | *Access Denied* | | | | CLDN |

**Attorneys**

| Attorney Name | Address | City/State/Zip |
|---|---|---|
| JOHNSON, COLIN M | P O BOX 1688 | FAYETTEVILLE, AR 72702-1688 |
| TAYLOR, DON ALLEN | P O BOX 1688 | FAYETTEVILLE, AR 72702-1688 |
| UNASSIGNED, UNASSIGNED | UNASSIGNED UNASSIGNED | |

| Party Name | Type | Address | City/State/Zip | Arrest Tracking # | Arrest Date | Birth Date | Death Date | Sex | Race | Party Status |
|---|---|---|---|---|---|---|---|---|---|---|
| ARVEST BANK | DEFENDANT | *Access Denied* | | | | *Access Denied* | | | | CLDN |

**Attorneys**

EXHIBIT

2

| Attorney Name | Address | City/State/Zip |
|---|---|---|
| HECK, SARA E | 216 NORTH MAIN STREET STE 4 | BENTONVILLE, AR 72712 |
| UNASSIGNED, UNASSIGNED | UNASSIGNED UNASSIGNED | |

**Actions**

| Party Name | Transaction Date | Docket Entry Description | Book | Page | Image |
|---|---|---|---|---|---|
| ALL PARTIES | 1/20/2009 | DIVISION WAS ASSIGNED TO DIVISION 4 | | | |
| ALL PARTIES | 1/20/2009 | JUDGE WAS ASSIGNED TO JUDGE MARY ANN GUNN | | | |
| ALL PARTIES | 1/20/2009 | COMPLAINT | | | 1 Page (s) |
| HUNTER, MARK | 1/20/2009 | SUMMONS ISSUED | | | 1 Page (s) |
| HUNTER, MARK | 2/2/2009 | SUMMONS SERVED 01/26/09 | | | 1 Page (s) |
| ALL PARTIES | 2/23/2009 | MOTION TO DISMISS FM DEF MARK HUNTER - D TAYLOR | | | 1 Page (s) |
| ALL PARTIES | 2/23/2009 | BRIEF IN SUPPORT - D TAYLOR | | | 1 Page (s) |
| ALL PARTIES | 2/24/2009 | HEARING DATE SET 05/08/09 01:30PM | | | 1 Page (s) |
| ALL PARTIES | 2/26/2009 | 1ST AMENDED COMPLAINT FM FM JARED DAVIS ET AL - J WALES | | | 1 Page (s) |
| ALL PARTIES | 2/26/2009 | BRIEF IN SUPPORT - J WALES | | | 1 Page (s) |
| ALL PARTIES | 2/26/2009 | RESPONSE TO MOTION TO DISMISS FM PLF JARED DAVIS ET AL - J WALES | | | 1 Page (s) |
| ALL PARTIES | 3/10/2009 | REPLY IN SUPPORT OF DEFS MOTION TO DISMISS FM DEF MARK HUNTER - D TAYLOR | | | 1 Page (s) |
| ALL PARTIES | 3/12/2009 | ANSWER FM DEF MARK HUNTER - D TAYLOR | | | 1 Page (s) |
| ALL PARTIES | 4/9/2009 | REQUESTS FOR ADMISSIONS FM DEF MARK HUNTER - D TAYLOR | | | 1 Page (s) |
| ALL PARTIES | 5/28/2009 | RESPONSES TO REQUESTS FOR ADMISSIONS FM PLFS JARED DAVIS ET AL - J WALES | | | 1 Page (s) |
| ALL PARTIES | 6/1/2009 | ORDER SETTING JURY TRIAL 04/13/10; 3RD OUT | 2009 | 21283 | 1 Page (s) |
| ALL PARTIES | 7/2/2009 | RESPONSE TO MOTION TO INTERVENE - J WALES | | | 1 Page (s) |
| ALL PARTIES | 7/6/2009 | MOTION TO INTERVENE - S HECK | | | 1 Page (s) |
| ALL PARTIES | 7/6/2009 | BRIEF IN SUPPORT OF ARVEST BANKS MOTION TO INTERVENE - S HECK | | | 1 Page (s) |
| ALL PARTIES | 7/9/2009 | ARVEST BANKS REPLY TO PLFS RESPONSE TO MOTION TO INTERVENE - S HECK | | | 1 Page (s) |
| ALL PARTIES | 7/14/2009 | HEARING DATE SET 09/18/09 1:30PM | | | 1 Page (s) |
| ALL PARTIES | 8/18/2009 | MOTION TO WITHDRAW FM PLFS JARED DAVIS ET AL - J WALES | | | 1 Page (s) |
| ALL PARTIES | 8/31/2009 | ORDER GRANTING MOTION TO WITHDRAW FM PLFS - J WALES | 2009 | 34104 | 1 Page (s) |
| ALL PARTIES | 9/28/2009 | 2ND SET OF REQUESTS FOR ADMISSIONS FM DEF MARK HUNTER - C JOHNSON | | | 1 Page |

| | | | | | (s) |
|---|---|---|---|---|---|
| ALL PARTIES | 10/5/2009 | ORDER GRANTING ARVEST BANKS MOTION TO INTERVENE | 2009 | 39336 | 1 Page (s) |
| ALL PARTIES | 10/14/2009 | COMPLAINT IN INTERVENTION FM SEP DEF ARVEST BANK - S HECK | | | 1 Page (s) |
| ALL PARTIES | 10/21/2009 | CERTIFICATE OF MAILING - S HECK | | | 1 Page (s) |
| ALL PARTIES | 10/21/2009 | ENTRY OF APPEARANCE FM PLFS JARED DAVIS ET AL - J SCOTT | | | 1 Page (s) |
| ALL PARTIES | 10/21/2009 | APPLICATION FOR PRO HAC VICE ADMISSION TO PRACTICE BY COMITY ATTY - F HUDGENS FM PLF JARED DAVIS ET AL - J SCOTT | | | 1 Page (s) |
| ALL PARTIES | 10/21/2009 | ORDER GRANTING ADMISSION PRO HAC VICE ATTY - F HUDGENS | 2009 | 41272 | 1 Page (s) |
| ALL PARTIES | 10/27/2009 | ANSWER TO COMPLAINT IN INTERVENTION FM PLFS JARED DAVIS ET AL - J SCOTT | | | 1 Page (s) |
| ALL PARTIES | 10/27/2009 | ANSWERS TO 2ND SET OF REQUESTS FOR ADMISSION FM PLFS JARED DAVIS ET AL - J SCOTT | | | 1 Page (s) |
| ALL PARTIES | 10/28/2009 | ANSWER TO COMPLAINT IN INTERVENTION FM DEF MARK HUNTER - D TAYLOR | | | 1 Page (s) |
| ALL PARTIES | 12/30/2009 | INTERVENOR ARVEST BANKS FIRST SET OF REQUESTS FOR ADMISSIONS PROPOUNDED TO PLF JARED DAVIS - S HECK | | | 1 Page (s) |
| ALL PARTIES | 1/19/2010 | ANSWERS TO ARVEST BK'S FIRST SET OF REQUESTS FOR ADMISSIONS PROPOUNDED TO PLF, JARED DAVIS - J SCOTT | | | 1 Page (s) |
| ALL PARTIES | 2/12/2010 | MOTION TO WITHDRAW AS COUNSEL FOR PLFS - J SCOTT | | | 1 Page (s) |
| ALL PARTIES | 2/12/2010 | ORDER ALLOWING WITHDRAWAL OF COUNSEL | 2010 | 5695 | 1 Page (s) |
| ALL PARTIES | 3/24/2010 | MOTION FOR CONTINUANCE FM PLFS - F HUDGENS | | | 1 Page (s) |
| ALL PARTIES | 3/31/2010 | ENTRY OF APPEARANCE FOR PLFS - S COX | | | 1 Page (s) |
| ALL PARTIES | 4/23/2010 | ORDER AND NOTICE OF TRIAL RE-SETTING | 2010 | 16792 | 1 Page (s) |
| ALL PARTIES | 4/23/2010 | ORDER SETTING JURY TRIAL 6-29-10 9:00 AM | 2010 | 16794 | 1 Page (s) |
| ALL PARTIES | 5/6/2010 | ORDER RESETTING JURY TRIAL 9-21-10 9:00 AM | 2010 | 18545 | 1 Page (s) |
| ALL PARTIES | 6/1/2010 | NOTICE OF DEPOSITION OF DEF MARK HUNTER - S COX | | | 1 Page (s) |
| ALL PARTIES | 6/7/2010 | NOTICE OF DEPOSITION OF DEF MARK HUNTER - S HECK | | | 1 Page (s) |
| ALL PARTIES | 6/7/2010 | NOTICE OF DEPOSITION OF PLF JARED DAVIS - S HECK | | | 1 Page (s) |
| ALL PARTIES | 6/18/2010 | AMENDED NOTICE OF CONTINUED DEPOSITION - L COX | | | 1 Page (s) |
| ALL PARTIES | 6/25/2010 | AMENDED NOTICE OF DEPOSITION OF PLF JARED DAVIS - S HECK | | | 1 Page (s) |
| ALL PARTIES | 6/25/2010 | AMENDED NOTICE OF DEPOSITION OF DEF MARK HUNTER - S HECK | | | 1 Page (s) |
| ALL PARTIES | 7/14/2010 | AMENDED ANSWER & COUNTERCLAIMS FM SEP DEF MARK HUNTER - C JOHNSON | | | 1 Page (s) |
| ALL PARTIES | 8/3/2010 | ANSWER TO AMENDED COUNTERCLAIMS - L COX | | | 1 Page (s) |

| ALL PARTIES | 8/13/2010 | JOINT MOTION FOR CONTINUANCE FM J DAVIS, J2R LLC, MARK HUNTER, ARVEST BANK - D TAYLOR, L COX, S HECK | 1 Page (s) |
| ALL PARTIES | 9/27/2010 | SECOND AMENDED COMPLAINT FM PLFS JARED DAVIS J2R LLC & IMPACT 180 INC - L COX | 1 Page (s) |
| ALL PARTIES | 10/15/2010 | ANSWER TO PLFS 2ND AMENDED COMPLAINT - C JOHNSON | 1 Page (s) |

IN THE CIRCUIT COURT OF WASHINGTON COUNTY, ARKANSAS

JARED DAVIS and J2R, LLC                                              PLAINTIFFS

vs.                          Case No. CV 09 261-4

MARK HUNTER                                                          DEFENDANT

## COMPLAINT

For their Complaint, the plaintiffs state and allege that:

1. Jared Davis is a resident of Texas.

2. J2R, LLC ("J2R") is a limited liability company organized under the laws of the State

of Arkansas that maintains its principal place of business in Washington County, Arkansas.

Jared Davis is a member of J2R.

3. The defendant is a resident of Missouri.

4. The events forming the basis of this action occurred in Washington County, Arkansas.

5. This Court has jurisdiction over the parties and subject matter of this case, and venue

is proper in this Court.

### Count I - Usury

6. The allegations in paragraphs 1-5 are incorporated herein by reference.

7. On or about August 8, 2008, the defendant traveled to Fayetteville, Arkansas and

loaned $325,000 to Jared Davis so that the plaintiffs could purchase numerous vehicles from Tim

Hurd Lincoln Mercury d/b/a Suzuki of Fayetteville.

8. At that time, the parties met in Fayetteville, Arkansas for the purpose of

consummating the loan referenced above.  At their meeting, the parties signed the document

attached hereto as Exhibit 1, and the defendant funded the loan.  As evidenced by Exhibit 1,

1

Jared Davis was obligated to pay the defendant the principal loan balance of $325,000 + interest of $30,000 within 23 days of the funding date.  The defendant held various vehicles owned by the plaintiffs as collateral for the loan.

9.  Through their sales of the vehicles, the plaintiffs paid the defendant the $325,000 principal loan balance and the $30,000 in interest called for by their agreement.

10.  Article 19, § 13 of the Arkansas Constitution limits the maximum rate of interest that can be charged on loans to 5% above the Federal Reserve's Primary Credit Rate on a per annum basis.  At the time the loan referenced herein was made, the Federal Reserve's Primary Credit Rate was 2.25%.  Thus, the maximum rate allowed by Arkansas law for the loan at issue in this case would be 7.25% per annum.  The interest rate charged by the defendant on the loan at issue in this case was 146.49% on a per annum basis.

11.  The loan from the defendant as described herein was usurious under Arkansas law.  As a result, the plaintiffs are entitled to recover double the amount of interest paid to the defendant.  Since the plaintiffs paid a total of $30,000 in interest to the defendant on this usurious loan, they are entitled to a judgment against the defendant in the amount of $60,000.

### Count II - Conversion

12.  The allegations in paragraphs 1-11 are incorporated herein by reference.

13.  Even after the plaintiffs repaid the $325,000 loan to the defendant + the usurious interest as alleged herein, the defendant continued to keep the proceeds from the plaintiffs' sales of its vehicles, has continued to retain possession of some of the plaintiffs' vehicles, and has even sold some of the plaintiffs' vehicles without their permission.  The defendant has kept all of the proceeds from the sales of the plaintiffs' vehicles, has refused to surrender those proceeds to the

2

plaintiffs, has retained some of the plaintiffs' vehicles, and has sold some of the plaintiffs'

vehicles all without the plaintiffs' permission and despite the fact that the plaintiffs have repaid

the $325,000 loan + the usurious interest as alleged herein.

14. The defendant has wrongfully exercised dominion and control over the plaintiffs'

money and vehicles in violation of their rights thereto and has wrongfully deprived them of the

possession and use of their money and vehicles by refusing to pay the balance of the vehicle sales

proceeds over to them or to surrender possession of the vehicles back to them.

15. The defendant's wrongful acts of conversion have caused substantial damages to the

plaintiffs in an amount to be proven at trial. The defendant's actions as alleged herein were taken

either intentionally or maliciously in a concerted effort to cause damages to the plaintiffs.

16. Alternatively, the defendant should have known in the light of the surrounding

circumstances that his conduct would naturally and probably result in damages to the plaintiffs

but he continued his course of conduct with malice or in reckless disregard of the consequences

from which malice may be inferred. As a result, punitive damages should be assessed against the

defendant in addition to compensatory damages.

### Count III - Replevin

17. The allegations in paragraphs 1-16 are incorporated herein by reference.

18. The defendant remains in possession of at least the following vehicles owned by the

plaintiffs: a 2007 Cadillac Escalade, a 2008 Chevrolet Corvette, a 2008 Volkswagen Passat, and

a 2008 Chrysler Town & Country.

19. Despite the plaintiff having repaid the defendant the $325,000 principal loan balance

in full (not to mention the usurious interest and excess sales proceeds as alleged herein), the

3

defendant remains in possession of the plaintiffs' vehicles and refuses to allow them to retrieve their vehicles. The defendant has no justifiable reason or basis to retain possession of the plaintiffs' vehicles.

20. The plaintiffs are entitled to an order of delivery of the vehicles described above.

21. The plaintiffs are further entitled to a judgment against the defendant for any damages or wear and tear the vehicles might have sustained while in his possession or under his care, custody, and control.

22. The plaintiffs are entitled to a judgment against the defendant for compensatory damages in an amount to be proven at trial, punitive damages to be assessed by the jury, pre-judgment interest, and costs.

23. The plaintiffs request a jury trial.

WHEREFORE, the plaintiffs pray for a judgment against the defendant for compensatory and punitive damages in amounts to be assessed by the jury but with said amounts to exceed the amount required to invoke the diversity jurisdiction of federal courts, for an order of delivery of the vehicles described herein, for pre-judgment interest and costs, and for all other relief to which they may prove themselves entitled.

> JARED DAVIS and J2R, LLC,
> Plaintiffs
>
> By: _____
> Jason H. Wales, # 97191
> EVERETT & WALES
> P.O. Box 8370
> Fayetteville, AR 72703
> (479) 443-0292

4

08-08-2008

I Jared Davis will pay Mark Hunter 355,000 dollars in full on or before August 31, 2008 for reimbursement of loan of 325,000 dollars that was consummated on August 08, 2008 and Mark Hunter will hold all titles and as I, Jared Davis pays a title off Mark Hunter agrees to release title on payment. If not paid in full on August 31, 2008 Mark hunter will own all titles and automobiles due to default.

Jared Davis

Mark Hunter

Exhibit "1"

IN THE CIRCUIT COURT OF WASHINGTON COUNTY, ARKANSAS

PLAINTIFFS:        JARED DAVIS and J2R, LLC

VS.                        CASE NUMBER CV 09- **261-4**

DEFENDANT:      MARK HUNTER

PLAINTIFFS' ATTORNEY:        Jason Wales
ADDRESS:                              EVERETT & WALES
                                             P.O. Box 8370
                                             Fayetteville, AR 72703

THE STATE OF ARKANSAS TO: **Mark Hunter**

ADDRESS:                              3310 S. Campbell
                                             Springfield, MO 65807

SUMMONS

1. You are hereby notified that a lawsuit has been filed against you. The relief asked is stated in the attached complaint.
2. The attached complaint will be considered admitted by you and a judgment by default may be entered against you for the relief asked in the complaint unless you file a pleading and thereafter appear and present your defense. Your pleading or answer must meet the following requirements:
A. It must be in writing, and otherwise comply with the Arkansas Rules of Civil Procedure.
B. It must be filed in the clerk's office within thirty (30) days from the day you were served with this summons.
3. If you desire to be represented by an attorney you should immediately contact your attorney so that an answer can be filed for you within the time allowed.
4. Additional notices:

WITNESS MY HAND AND SEAL OF THE COURT THIS THE 20th DAY OF JANUARY, 2009.

SEAL

_____
BETTE STAMPS, CIRCUIT CLERK
WASHINGTON COUNTY COURTHOUSE
FAYETTEVILLE, ARKANSAS 72701

STATE OF ARKANSAS
COUNTY OF WASHINGTON

_____
DEPUTY CLERK

        On this \_\_\_ day of January, 2009, I have duly served the within writ by delivering a copy and stating the substance thereof to the within named.

                                             _____SHERIFF
                                             _____W.P.S.

IN THE CIRCUIT COURT OF WASHINGTON COUNTY, ARKANSAS

PLAINTIFFS:       JARED DAVIS and J2R, LLC

vs.                      CASE NUMBER CV 09-261-4

DEFENDANT:     MARK HUNTER

PLAINTIFFS' ATTORNEY:     Jason Wales
ADDRESS:                        EVERETT & WALES
                                    P.O. Box 8370
                                    Fayetteville, AR 72703

THE STATE OF ARKANSAS TO: **Mark Hunter**

ADDRESS:                        3310 S. Campbell
                                    Springfield, MO 65807

SUMMONS

1. You are hereby notified that a lawsuit has been filed against you. The relief asked is stated in the attached complaint.
2. The attached complaint will be considered admitted by you and a judgment by default may be entered against you for the relief asked in the complaint unless you file a pleading and thereafter appear and present your defense. Your pleading or answer must meet the following requirements:
A. It must be in writing, and otherwise comply with the Arkansas Rules of Civil Procedure.
B. It must be filed in the clerk's office within thirty (30) days from the day you were served with this summons.
3. If you desire to be represented by an attorney you should immediately contact your attorney so that an answer can be filed for you within the time allowed.
4. Additional notices:

WITNESS MY HAND AND SEAL OF THE COURT THIS THE 20th DAY OF JANUARY, 2009.

SEAL                                     BETTE STAMPS, CIRCUIT CLERK
                                             WASHINGTON COUNTY COURTHOUSE
                                             FAYETTEVILLE, ARKANSAS 72701

STATE OF ARKANSAS
COUNTY OF WASHINGTON          DEPUTY CLERK

        On this 26 day of January, 2009, I have duly served the within writ by delivering a copy and stating the substance thereof to the within named.

_Rodney Burk_ → Process Server
_Rodney Burk_ W.P.S.

## IN THE CIRCUIT COURT OF WASHINGTON COUNTY, ARKANSAS
## <u>CIVIL DIVISION</u>

JARED DAVIS and J2R, LLC

v.                                    Case No. CV-09-261-4

MARK HUNTER

### <u>MOTION TO DISMISS</u>

Comes now defendant Mark Hunter, by and through his attorneys, Don A. Taylor and Colin

M. Johnson and the law firm of Davis, Clark, Butt, Carithers & Taylor, PLC, and for his Motion to

Dismiss, states and alleges as follows:

1.      Plaintiffs filed their Complaint on January 20, 2009, initiating this action in the

Circuit Court of Washington County, Arkansas.

2.      Separate plaintiff J2R, LLC, was not a party to the underlying contract that is the basis

of this litigation, and has otherwise failed to state facts upon which relief can be granted.

3.      As to separate plaintiff Jared Davis, venue is not proper in Washington County,

Arkansas, pursuant to ARK. CODE ANN. §16-60-101 *et seq.*

4.      As such, Plaintiffs' Complaint should be dismissed pursuant to Rules 12(b)(3) and

12(b)(6) of the ARKANSAS RULES OF CIVIL PROCEDURE.

5.      A brief in support of this Motion has been filed in conjunction herewith.

6.      In the event this Motion is not granted, defendant Mark Hunter requests that the Court

grant additional time for him to answer or otherwise plead further after the entry of any such order

denying this Motion pursuant to Rule 12.

WHEREFORE, defendant Mark Hunter, prays that Plaintiffs' Complaint be dismissed

pursuant to Rules 12(b)(3) and 12(b)(6) of the ARKANSAS RULES OF CIVIL PROCEDURE, for his costs

and attorney fees, and for any further relief to which he may be entitled, whether specifically prayed

for herein or not, and that in the event this Motion is denied, he be given 15 days from the date of

any such order to file further responsive pleadings.

Respectfully submitted,

MARK HUNTER

By: _____

Don A. Taylor     #89139
Colin M. Johnson      #2007-189
DAVIS, CLARK, BUTT, CARITHERS
    & TAYLOR, PLC
P.O. Box 1688
Fayetteville, AR 72702-1688
(479) 521-7600

## CERTIFICATE OF SERVICE

I, Don A. Taylor, certify that I have served the following counsel of record in the foregoing matter with a copy of this pleading by depositing the same in the United States Mail, postage prepaid, this _23rd_ day of February, 2009.

Jason H. Wales
EVERETT & WALES
P.O. Box 8370
Fayetteville, AR 72703

_____
Don A. Taylor

2

## IN THE CIRCUIT COURT OF WASHINGTON COUNTY, ARKANSAS
## CIVIL DIVISION

JARED DAVIS and J2R, LLC

v.                                    Case No. CV-09-261-4

MARK HUNTER

### BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

According to Plaintiffs' Complaint, separate plaintiff Jared Davis and defendant Mark Hunter

entered into a contract (a copy of which is attached hereto as Exhibit "A") on August 8, 2008,

whereby separate plaintiff Jared Davis promised to repay a loan which was being made to him by

defendant Mark Hunter. According to Plaintiffs, defendant Mark Hunter was to hold title to certain

automobiles, as collateral for repayment of the loan. The contract further provides that, upon

repayment of the loan, defendant Mark Hunter shall release title of the automobiles back to separate

plaintiff Jared Davis. However, in the event that separate plaintiff Jared Davis should fail to repay

the loan by August 31, 2008, the contract provides that defendant Mark Hunter "will own all titles

and automobiles due to default."

A.   Separate Plaintiff J2R, LLC Was Not Party to the Contract Which Is the
     Basis of this Action, and Has Failed to State Facts upon Which Relief Can Be
     Granted.

Plaintiffs' Complaint alleges that the contract entered into by separate plaintiff Jared Davis

is usurious. In addition, Plaintiffs further allege that, even after repayment of the loan, defendant

Mark Hunter failed to release the collateralized titles and automobiles. Although Plaintiffs label

their action as one for usury, conversion, and replevin, it is clear from the allegations in the

Complaint that the real cause of action is one for usury and breach of contract. In fact, being that

the title and possession of the automobiles were transferred to defendant Mark Hunter under the

terms of the contract, without a breach of the contract, there could be no conversion or replevin of the property as alleged by Plaintiffs.

With respect to breach of contract, in order to state a claim, a complaint need only assert the following: (1) the existence of a valid enforceable contract between the plaintiff and defendant; (2) the obligation of the defendant thereunder; (3) a violation by the defendant; and (4) assert damages resulting to the plaintiff. *Perry v. Baptist Health,* 358 Ark. 238, 244, 189 S.W.3d 54, 56 (2004). Separate plaintiff J2R, LLC has failed to satisfy the first two requirements. A plain reading of the contract attached to Plaintiffs' Complaint reveals that separate plaintiff J2R, LLC was not a party to the contract. Furthermore, there is nothing in the contract providing that defendant Mark Hunter will in any way be obligated to separate plaintiff J2R, LLC. Furthermore, separate plaintiff J2R, LLC makes no allegations that it was an intended third-party beneficiary of the contract. Even if separate plaintiff J2R, LLC had made such an allegation, its efforts would have been futile. While it is not necessary that a person be specifically named as a third-party beneficiary by a contract, it is necessary that the person at least be a member of a class of persons sufficiently described or designated in the contract. *Id* at 245. In the case at bar, there can be no argument that J2R, LLC falls into such a designated class of persons. It is indisputable that the language of the contract at issue names only separate plaintiff Jared Davis and defendant Mark Hunter as parties thereto, and contains no designation or description of any other person or class of persons.

With respect to the usury claim, the same analysis and logic applies. Certainly, an entity who is neither a party to, nor a third-party beneficiary of, a contract, has no standing to object to that contract as being usurious.

As such, separate plaintiff J2R, LLC has failed to state facts upon which relief can be granted, and each of its claims should be dismissed pursuant to Rule 12(b)(6) of the ARKANSAS RULES OF CIVIL PROCEDURE.

> B. Even Taking the Factual Allegations Contained in Plaintiffs' Complaint as True, Separate Plaintiff Jared Davis's Claims Should Still Be Dismissed Because Venue Is Not Proper in this Court.

It has long been an underlying policy of the State of Arkansas that "every defendant should be liable to suit only in the county of his residence or place of business, unless for other policy reasons there are statutes to the contrary." *Ozark Supply Company v. Glass*, 261 Ark. 750, 753, 552 S.W.2d 1, 2 (1977). When two or more actions are pled which would lie in different venues, it is the real character of the action, the principal right being asserted, that establishes venue. *Fraser Bros. v. Darragh Company*, 316 Ark. 297, 298, 871 S.W.2d 367, 368 (1994).

Although the Complaint in the present case asserts separate causes of action for usury, conversion, and replevin, the real character of the action is one for usury and breach of contract. As discussed above, without a determination that there was a breach of contract by defendant Mark Hunter, there can be no claim for conversion or replevin. Being that there is no specific statutory provision concerning usury, the appropriate venue for such a claim is either the county in which the defendant resides, or the county where the defendant was served with the summons. *See* Ark. Code Ann. §16-60-116(a) and *Ozark Supply Company*, 261 Ark. at 753. With respect to the breach of contract claim, Ark. Code Ann. §16-60-109(a) provides an additional venue option in that a contract action against a non-resident may also be brought in the county in which a plaintiff resided at the time the cause of action arose. As such, there are only three possible venues in which separate plaintiff Jared Davis could bring this suit: (1) the county where Mark Hunter resided when the cause

3

of action accrued; (2) the county where Jared Davis resided when the cause of action accrued; or (3) the county where Mark Hunter was served with the summons. According to his own Complaint, separate plaintiff Jared Davis is a resident of Texas, while defendant Mark Hunter is a resident of Missouri. Furthermore, the return of service filed in this case (a copy of which is attached hereto as Exhibit "B") indicates that defendant Mark Hunter was served in Springfield, Missouri. Being that neither Jared Davis nor Mark Hunter were residents of Washington County, Arkansas at the time the cause of action accrued, and that Mark Hunter was not served in Washington County, Arkansas, venue is not proper in this Court.

For these reasons, and pursuant to Rules 12(b)(3) and 12(b)(6) of the ARKANSAS RULES OF CIVIL PROCEDURE, defendant Mark Hunter respectfully requests that his Motion to Dismiss be granted and that he be dismissed with prejudice as a defendant in this case.

Respectfully submitted,

MARK HUNTER

By: _____

Don A. Taylor     #89139
Colin M. Johnson     #2007-189
DAVIS, CLARK, BUTT, CARITHERS
     & TAYLOR, PLC
P.O. Box 1688
Fayetteville, AR 72702-1688
(479) 521-7600

4

## CERTIFICATE OF SERVICE

I, Don A. Taylor, certify that I have served the following counsel of record in the foregoing matter with a copy of this pleading by depositing the same in the United States Mail, postage prepaid, this ⟋⟍ day of February, 2009.

Jason H. Wales
EVERETT & WALES
P.O. Box 8370
Fayetteville, AR 72703

Don A. Taylor

5

08-08-2008

I Jared Davis will pay Mark Hunter 355,000 dollars in full on or before August 31, 2008 for reimbursement of loan of 325,000 dollars that was consummated on August 08, 2008 and Mark Hunter will hold all titles and as I, Jared Davis pays a title off Mark Hunter agrees to release title on payment. If not paid in full on August 31, 2008 Mark hunter will own all titles and automobiles due to default.

Jared Davis

Mark Hunter

**EXHIBIT**

A

IN THE CIRCUIT COURT OF WASHINGTON COUNTY, ARKANSAS

PLAINTIFFS:     JARED DAVIS and J2R, LLC

VS.                CASE NUMBER CV 09-261-4

DEFENDANT:   MARK HUNTER

*FILED FOR RECORD*
*2009 FEB -2  PM 3: 46*
*WASHINGTON CO AR*
*CIRCUIT CLERK*
*B STAMPS*

PLAINTIFFS' ATTORNEY:
ADDRESS:
           Jason Wales
           EVERETT & WALES
           P.O. Box 8370
           Fayetteville, AR 72703

THE STATE OF ARKANSAS TO:  **Mark Hunter**

ADDRESS:
           3310 S. Campbell
           Springfield, MO 65807

## SUMMONS

1. You are hereby notified that a lawsuit has been filed against you. The relief asked is stated in the attached complaint.

2. The attached complaint will be considered admitted by you and a judgment by default may be entered against you for the relief asked in the complaint unless you file a pleading and thereafter appear and present your defense. Your pleading or answer must meet the following requirements:

A. It must be in writing, and otherwise comply with the Arkansas Rules of Civil Procedure.

B. It must be filed in the clerk's office within thirty (30) days from the day you were served with this summons.

3. If you desire to be represented by an attorney you should immediately contact your attorney so that an answer can be filed for you within the time allowed.

4. Additional notices:

WITNESS MY HAND AND SEAL OF THE COURT THIS THE 20th DAY OF JANUARY, 2009.

SEAL

BETTE STAMPS, CIRCUIT CLERK
WASHINGTON COUNTY COURTHOUSE
FAYETTEVILLE, ARKANSAS 72701

STATE OF ARKANSAS
COUNTY OF WASHINGTON

DEPUTY CLERK

     On this **26** day of January, 2009, I have duly served the within writ by delivering a copy and stating the substance thereof to the within named.

*Rodney Burk*   Process Server
*Rodney Burk*   W.P.S.



**EXHIBIT**

B



# STATE OF ARKANSAS

CIRCUIT COURT
FOURTH JUDICIAL DISTRICT
FOURTH DIVISION
P.O. BOX 4703
FAYETTEVILLE, AR 72702-4703
TEL. (479) 973-8420
FAX. (479) 973-8426
EMAIL: mgunn@co.washington.ar.us

MARY ANN GUNN
CIRCUIT JUDGE

STEPHANIE CAMPBELL
Case Coordinator

RHONDA HOLIDAY
Drug Court Case Coordinator

VICKIE S. HASSELL
Certified Court Reporter

DEPUTY BOBBY McDONALD
Court Officer

*February 24, 2009*

**Don Taylor, Atty.**
P.O. Box 1688
Fayetteville, AR 72702-1688

**Jason Wales, Atty.**
P.O. Box 8370
Fayetteville, AR 72703

FILED FOR RECORD
2009 FEB 24  PM 4: 20
WASHINGTON CO. AR
CIRCUIT CLERK
B. STAMPS

RE: *Jared Davis and J2R, LLC v. Mark Hunter*
Washington County Case No. CV-2009-261-4

*Dear Counsel:*

Please be advised that the above-styled case has been scheduled for **a Hearing on the Motion to Dismiss on May 8, 2009 at 1:30 p.m.**

If your case should settle prior to this date, please let us know as soon as possible. If this date causes a conflict with your scheduling please contact our office within two days to reschedule.

Sincerely,

Stephanie Campbell
Case Coordinator
**CC: Court File**

IN THE CIRCUIT COURT OF WASHINGTON COUNTY, ARKANSAS

JARED DAVIS and J2R, LLC                                    PLAINTIFFS

FILED FOR RECORD

vs.                          Case No. CV 09-261-4              2009 FEB 26   PM 3: 34

MARK HUNTER                                                  WASHINGTON CO AR
                                                            CIRCUIT CLERK  DEFENDANT
                                                            B. STAMPS

### FIRST AMENDED COMPLAINT

For their First Amended Complaint, the plaintiffs state and allege that:

1.  Jared Davis resides in Texas and so resided when the initial Complaint was filed in this matter.  However, Jared Davis resided in Washington County, Arkansas during the times when a substantial part of the events giving rise to the claims asserted herein occurred. Specifically, Jared Davis resided in Washington County, Arkansas from approximately April 1, 2008, until approximately mid-October, 2008.

2.  J2R, LLC ("J2R") is a limited liability company organized under the laws of the State of Arkansas that maintains its principal place of business in Washington County, Arkansas. Jared Davis is a member of J2R.

3.  The defendant is a resident of Missouri.

4.  A substantial part of the events forming the basis of this action occurred in Washington County, Arkansas.

5.  This Court has jurisdiction over the parties and subject matter of this case, and venue is proper in this Court.

### Count I - Usury

6.  The allegations in paragraphs 1-5 are incorporated herein by reference.

7.  On or about August 8, 2008, the defendant traveled to Fayetteville, Arkansas and

1

loaned $325,000 to Jared Davis for the purchase of numerous used vehicles from Tim Hurd Lincoln Mercury d/b/a Suzuki of Fayetteville ("Tim Hurd). In this respect, an Arkansas corporation known as Impact 180, Inc. had previously entered into a contract with Tim Hurd to purchase, among other things, its used car inventory. Impact 180, Inc. later assigned its rights under that contract to J2R, and J2R did, in fact, purchase Tim Hurd's used car inventory using, in part, the funds Jared Davis borrowed from the defendant as alleged herein.

8. On or about August 8, 2008, Jared Davis and the defendant met in Fayetteville, Arkansas for the purpose of consummating the loan referenced above. At their meeting, the parties signed the document attached as Exhibit 1 to the Complaint, and the defendant funded the loan. As evidenced by Exhibit 1, Jared Davis was obligated to pay the defendant the principal loan balance of $325,000 + interest of $30,000 within 23 days of the funding date. The defendant held various vehicles as collateral for the loan.

9. Jared Davis paid the defendant the $325,000 principal loan balance and the $30,000 in interest called for by the parties' agreement.

10. Article 19, § 13 of the Arkansas Constitution limits the maximum rate of interest that can be charged on loans to 5% above the Federal Reserve's Primary Credit Rate on a per annum basis. At the time the loan referenced herein was made, the Federal Reserve's Primary Credit Rate was 2.25%. Thus, the maximum rate allowed by Arkansas law for the loan at issue in this case would be 7.25% per annum. The interest rate charged by the defendant on the loan at issue in this case was 146.49% on a per annum basis.

11. The loan from the defendant as described herein was usurious under Arkansas law. As a result, Jared Davis is entitled to recover double the amount of interest paid to the defendant.

2

Since Jared Davis paid a total of $30,000 in interest to the defendant on this usurious loan, he is entitled to a judgment against the defendant in the amount of $60,000.

### Count II - Conversion

12. The allegations in paragraphs 1-11 are incorporated herein by reference.

13. Even after the $325,000 loan + the usurious interest was repaid to the defendant as alleged herein, the defendant continued to keep the proceeds from the sales of vehicles owned by J2R, has continued to retain possession of some of J2R's vehicles, and has even sold some of J2R's vehicles without its permission. The defendant has kept all of the proceeds from the sales of J2R's vehicles, has refused to surrender those proceeds to J2R, has retained some of J2R's vehicles, and has sold some of J2R's vehicles all without J2R's permission and despite the fact that Jared Davis repaid the $325,000 loan + the usurious interest.

14. The defendant has wrongfully exercised dominion and control over J2R's money and vehicles in violation of its rights thereto and has wrongfully deprived it of the possession and use of its money and vehicles by refusing to pay the balance of the vehicle sales proceeds over to it or to surrender possession of the vehicles back to it.

15. The defendant's wrongful acts of conversion have caused substantial damages to J2R in an amount to be proven at trial. The defendant's actions as alleged herein were taken either intentionally or maliciously in a concerted effort to cause damages to J2R and its members including, but not limited to, Jared Davis.

16. Alternatively, the defendant should have known in the light of the surrounding circumstances that his conduct would naturally and probably result in damages to J2R or its members including, but not limited to, Jared Davis, but he continued his course of conduct with

3

malice or in reckless disregard of the consequences from which malice may be inferred.  As a result, punitive damages should be assessed against the defendant in addition to compensatory damages.

17.  J2R is entitled to a judgment against the defendant for compensatory damages in an amount to be proven at trial.  J2R is further entitled to a judgment against the defendant for punitive damages in an amount to be awarded by the jury.

### Count III - Replevin

18.  The allegations in paragraphs 1-17 are incorporated herein by reference.

19.  The defendant remains in possession of at least the following vehicles owned by J2R: a 2007 Cadillac Escalade, a 2008 Chevrolet Corvette, a 2008 Volkswagen Passat, and a 2008 Chrysler Town & Country.

20.  Despite Jared Davis having repaid the defendant the $325,000 principal loan balance in full (not to mention the usurious interest and excess sales proceeds as alleged herein), the defendant remains in possession of J2R's vehicles and refuses to allow it to retrieve them.  The defendant has no justifiable reason or basis to retain possession of J2R's vehicles.

21.  J2R is entitled to an order of delivery of the vehicles described above.

22.  J2R is further entitled to a judgment against the defendant for any damages or wear and tear the vehicles might have sustained while in his possession or under his care, custody, and control.

23.  J2R is entitled to a judgment against the defendant for compensatory damages in an amount to be proven at trial, punitive damages to be assessed by the jury, pre-judgment interest, and costs.

4

24.  The plaintiffs request a jury trial.

WHEREFORE, the plaintiffs pray for judgments against the defendant as requested

herein for compensatory and punitive damages in amounts to be assessed by the jury but with

said amounts to exceed the amount required to invoke the diversity jurisdiction of federal courts,

for an order of delivery of the vehicles described herein, for pre-judgment interest and costs, and

for all other relief to which they may prove themselves entitled.

JARED DAVIS and J2R, LLC,
Plaintiffs

By: _____
Jason H. Wales, # 97191
EVERETT & WALES
P.O. Box 8370
Fayetteville, AR 72703
(479) 443-0292

## CERTIFICATE OF SERVICE

I state that I have deposited in the United States Mail, postage prepaid, a true and correct
copy of the above and foregoing pleading to Mr. Don A. Taylor, Davis, Clark, Butt, Carithers &
Taylor, PLC, P.O. Box 1688, Fayetteville, AR 72702 on this **26** day of February, 2009.

_____
Jason H. Wales

5

IN THE CIRCUIT COURT OF WASHINGTON COUNTY, ARKANSAS

JARED DAVIS and J2R, LLC                                      FILED FOR RECORD   PLAINTIFFS

vs.                          Case No. CV 09-261-4            2009 FEB 26  PM 3: 34

MARK HUNTER                                                  WASHINGTON COUNTY   DEFENDANT
                                                             CIRCUIT CLERK
                                                             B. STAMPS

## RESPONSE TO MOTION TO DISMISS

For their Response to Motion to Dismiss, the plaintiffs respond as follows:

1. The allegations in paragraph 1 are admitted.

2. The allegations in paragraphs 2-4 are denied.

3. The allegations in paragraph 5 are admitted.

4. In response to the allegations in paragraph 6, the Arkansas Rules of Civil Procedure already provide a certain time period within which the defendant must file his Answer in the event the Court denies his Motion to Dismiss.

WHEREFORE, the plaintiffs pray for an Order denying the defendant's Motion to Dismiss and for all other relief to which they may prove themselves entitled.

Respectfully submitted,

EVERETT & WALES
P.O. Box 8370
Fayetteville, AR 72703
(479) 443-0292

By: _____

Jason H. Wales
Bar No. 97191

1

## CERTIFICATE OF SERVICE

I state that I have deposited in the United States Mail, postage prepaid, a true and correct copy of the above and foregoing pleading to Mr. Don A. Taylor, Davis, Clark, Butt, Carithers & Taylor, PLC, P.O. Box 1688, Fayetteville, AR 72702 on this 26 day of February, 2009.

Jason H. Wales

2

IN THE CIRCUIT COURT OF WASHINGTON COUNTY, ARKANSAS

JARED DAVIS and J2R, LLC                                                      PLAINTIFFS

vs.                              Case No. CV 09-261-4

MARK HUNTER                                                                  DEFENDANT

FILED FOR RECORD

2009 FEB 26  PM 3: 34

WASHINGTON CO AR
CIRCUIT CLERK
B  STAMPS

## BRIEF IN SUPPORT OF RESPONSE TO MOTION TO DISMISS

The defendant seeks dismissal of the plaintiffs' Complaint on two grounds.  First, he claims that J2R, LLC has failed to state facts upon which relief can be granted and seeks dismissal of its claims under Rule 12(b)(6).  Second, he claims that Washington County is the improper venue for this case and seeks dismissal of both plaintiffs' claims under Rule 12(b)(3).  For the reasons set forth herein, the defendant's arguments are without merit, and his Motion should be denied.

### A.      J2R, LLC has stated facts upon which relief can be granted

In an effort to clear up any confusion that might exist in what relief each plaintiff is seeking and what the bases are for each of their claims, the plaintiffs have filed an Amended Complaint.  Arkansas law is well settled that in deciding the defendant's Rule 12(b)(6) Motion, the Court must accept as true all allegations in the plaintiffs' Amended Complaint and view those allegations in the light most favorable to them.  *City of Dardanelle v. City of Russellville,* 372 Ark. 486, -- S.W.3d -- (2008).  When doing that, it is clear that J2R has alleged sufficient facts to state claims for conversion and replevin against the defendant, and Jared Davis has alleged sufficient facts to state a usury claim against the defendant.  The defendant's 12(b)(6) Motion is without merit and should be denied.

1

**B.      Washington County is the proper venue for this case**

It is important to note that the defendant does not take issue with this Court exercising

personal jurisdiction over him.  So, given the fact that the defendant acknowledges he is subject

to the jurisdiction of Arkansas's courts, the question then becomes which county in Arkansas is

the proper venue for this litigation.  Interestingly, the defendant does not suggest a different

county in Arkansas that would be the proper venue for this case.

The defendant's venue arguments are based on outdated law.  Gone are the days where

venue depended on the county where the defendant resided or turned on the "real character of the

action."  For most causes of action, including the ones asserted by the plaintiffs herein, those

issues no longer matter when it comes to resolving venue questions.  In 2003, the Arkansas

General Assembly enacted the Civil Justice Reform Act of 2003 which contained sweeping

changes to the law on venue.  That Act provides as follows:

16-55-213 Venue.

(a) **All civil actions** other than those mentioned in §§ 16-60-101 – 16-60-103,
16-60-107, 16-60-114, and 16-60-115, and subsection (e) of this section[1] must be
brought in any of the following counties:
(1) The county in which a substantial part of the events or omissions giving rise
to the claim occurred;
(2)(A) The county in which an individual defendant resided.
(B) If the defendant is an entity other than an individual, the county where the
entity had its principal office in this state at the time of the accrual of the cause of action;
**or**
(3)(A) The county in which the plaintiff resided.
(B) If the plaintiff is an entity other than an individual, the county where the
plaintiff had its principal office in this state at the time of the accrual of the cause of
action.

---

[1]  The plaintiffs' claims for usury, conversion, and replevin do not fit within any of these
enumerated exceptions.

Ark. Code Ann. § 16-55-213(a) (emphasis added).

The Arkansas Court of Appeals has acknowledged the sweeping changes to venue law resulting from the enactment of the Civil Justice Reform Act of 2003:

> In their treatise, *Arkansas Civil Practice & Procedure* § 6-1, at 25 (Supp. 2003), Justice David Newbern and Professor John Watkins note that the Civil Justice Reform Act, Act 649 of 2003, codified at Ark. Code Ann. §§ 16-55-201 *et seq.*, significantly altered this state's "venue landscape." They state that, although the focus of the act is tort reform, it contains venue provisions that apply, with certain exceptions, to "all civil actions" accruing on or after March 25, 2003.

*Ison Properties, LLC v. Wood,* 85 Ark. App. 443, 447, 156 S.W.3d 742, 744 n. 1 (2004).

Here, the plaintiffs' Amended Complaint clearly alleges civil actions for usury, conversion, and replevin against the defendant. Thus, Ark. Code Ann. § 16-55-213(a) applies to establish venue. As alleged in the plaintiffs' Amended Complaint, a substantial part of the events giving rise to their claims occurred in Washington County. Moreover, Jared Davis resided in Washington County at the time a substantial part of the events giving rise to the plaintiffs' claims occurred. Also, J2R's principal place of business was in Washington County when this action accrued.

Obviously, the plaintiffs had the right to choose the venue for this case. Perhaps they could have chosen to file suit in Springfield, Missouri. They did not; they chose to file the case in Washington County, Arkansas as was their right to do. As established by the allegations in the Amended Complaint and shown herein, there are at least 3 different provisions in Ark. Code Ann. § 16-55-213(a) that the plaintiffs have satisfied, each of which standing alone justifies venue in Washington County. The defendant's Motion is without merit and should be dismissed.

Respectfully submitted,

EVERETT & WALES
P.O. Box 8370
Fayetteville, AR 72703
(479) 443-0292

By: _____
Jason H. Wales
Bar No. 97191


**CERTIFICATE OF SERVICE**

I state that I have deposited in the United States Mail, postage prepaid, a true and correct copy of the above and foregoing pleading to Mr. Don A. Taylor, Davis, Clark, Butt, Carithers & Taylor, PLC, P.O. Box 1688, Fayetteville, AR 72702 on this **26** day of February, 2009.

_____
Jason H. Wales

4

**IN THE CIRCUIT COURT OF WASHINGTON COUNTY, ARKANSAS**
**CIVIL DIVISION**

JARED DAVIS and J2R, LLC

PLAINTIFF

v.                                  Case No. CV-09-261-4

MARK HUNTER                                          DEFENDANT

**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

      In the Brief in Support of their Response, Plaintiffs clarify their respective positions in the sense that separate plaintiff Jared Davis is asserting a separate claim for usury, while separate plaintiff J2R, LLC is asserting separate claims for conversion and replevin.

      With respect to defendant Mark Hunter's Motion to Dismiss for improper venue, Plaintiffs assert that the Motion is based upon outdated law. However, for such a statement to be true, one would have to blindly accept that the venue statues relied upon and cited in the Motion were impliedly repealed by the passage of the Civil Justice Reform Act of 2003. However, repeal by implication is not favored and is never allowed except where two seemingly conflicted provisions cannot stand together. *Wright v. Centerpoint Energy Resources Corp.*, 372 Ark. 330, 333, 2008 Ark. LEXIS 97 (Feb. 14, 2008). In fact, seemingly conflicting statutes should be read in a harmonious manner where possible. *Id.* However, in light of the newly raised allegations that separate plaintiff Jared Davis was a resident of Washington County, Arkansas, at the time the cause of action arose, which would properly place venue in this Court under either venue statute, this issue is moot. As such, the Defendant hereby withdraws his Motion to Dismiss as to separate plaintiff Jared Davis. On the other hand, the defendant Mark Hunter maintains his Motion to Dismiss as to separate plaintiff J2R, LLC for failure to state a claim upon which relief can be granted.

With respect to the claims for conversion and replevin, separate plaintiff J2R, LLC asserts that it has alleged sufficient facts to state a claim. In support of this contention, separate plaintiff J2R, LLC relies upon the allegations contained in their First Amended Complaint, and the fact that this Court must view those allegations in the light most favorable to the Plaintiffs. However, the allegations contained in Plaintiffs' First Amended Complaint are still insufficient to establish a cause of action for conversion or replevin in separate plaintiff, J2R, LLC. As a basic rule of pleading, Rule 8(a) of the Arkansas Rules of Civil Procedure requires a complaint to contain facts showing that the pleader is entitled to relief. Facts, not mere conclusions, must be alleged. *Hollingsworth v. First National Bank and Trust*, 311 Ark. 637, 639, 846 S.W.2d 176, (1993). As such, in order to maintain a cause of action for conversion, a plaintiff must plead facts sufficient to establish: (1) that they owned or were entitled to possession of the disputed property; and (2) that the defendant exercised dominion or control over the disputed property in violation of the plaintiff's right. *See* ARKANSAS MODEL JURY INSTRUCTIONS – CIVIL, AMI 425 (2008 Edition). Similarly, a replevin action can only be maintained by a person who has a property interest in the property taken or detained. *Anderson v. Sharp County, Arkansas*, 295 Ark. 366, 369, 749 S.W.2d 306, 308 (1988). Plaintiffs' First Amended Complaint fails on both claims.

Paragraph 8 of Plaintiffs' First Amended Complaint alleges as follows:

On or about August 8, 2008, Jared Davis and the defendant met in Fayetteville, Arkansas for the purpose of consummating the loan referenced above. At their meeting, the parties signed the document attached as Exhibit 1 to the Complaint, and the defendant funded the loan. As evidenced by Exhibit 1, Jared Davis was obligated to pay the defendant the principal loan balance of $325,000 + interest of $30,000 within 23 days of the funding date. The defendant held *various vehicles* as collateral for the loan.

2

(Emphasis added). Even taking the allegations in paragraph 8 as true, which defendant Mark Hunter

denies, one can see that there is no allegation that separate plaintiff J2R, LLC either owned or was

otherwise entitled to possession of the vehicles allegedly held as collateral by defendant Mark

Hunter. If anything, paragraph 8 of Plaintiffs' First Amended Complaint seems to suggest that the

"various vehicles" belonged to separate plaintiff Jared Davis, being that they were allegedly being

held as collateral for his personal loan.

> Paragraph 13 of Plaintiffs' First Amended Complaint alleges as follows:
>
> Even after the $325,000 loan + the usurious interest was repaid to the defendant as
> alleged herein, the defendant continued to keep the proceeds from the sales of
> vehicles owned by J2R, has continued to retain possession of some of J2R's vehicles,
> and has even sold some of J2R's vehicles without its permission. The defendant has
> kept all of the proceeds from the sales of J2R's vehicles, has refused to surrender
> those proceeds to J2R, has retained some of J2R's vehicles, and has sold some of
> J2R's vehicles all without J2R's permission and despite the fact that Jared Davis
> repaid the $325,000 loan + usurious interest.

While paragraph 13 contains many allegations, none of those allegations contain facts sufficient to

establish that separate plaintiff J2R either owned or was entitled to possession of the vehicles or

proceeds mentioned. In fact, the written agreement attached as Exhibit "1" to Plaintiffs' own

Complaint, and referenced in the First Amended Complaint, clearly provides that "Mark Hunter will

hold all titles and as I, Jared Davis pays a title off Mark Hunter agrees to release title on payment."

Based upon this written agreement, it is abundantly clear that defendant Mark Hunter was holding

titles to the vehicles mentioned in Paragraph 13, and if anyone was entitled to possession upon

payment, it was Jared Davis, not J2R, LLC. In fact, J2R, LLC is neither mentioned nor contemplated

in the written agreement attached to Plaintiffs' Complaint. As such, separate plaintiff J2R, LLC is

required to plead facts sufficient to establish that it is entitled to relief, or in other words, that it was

entitled to possession of the disputed vehicles, as opposed to Jared Davis or Mark Hunter. Plaintiffs'
First Amended Complaint fails in this regard in that it contains nothing more than conclusory
statements that the disputed vehicles were owned by separate plaintiff J2R, LLC. As previously
discussed, mere conclusions will not suffice. *Hollingsworth v. First National Bank and Trust*, 311
Ark. 637, 639, 846 S.W.2d 176, (1993).

    For these reasons, and pursuant to Rule 12(b)(6) of the Arkansas Rules of Civil Procedure,
defendant Mark Hunter respectfully requests his Motion to Dismiss as to separate plaintiff J2R, LLC
be granted and that Counts II and III of Plaintiffs' First Amended Complaint be dismissed for failure
to state facts upon which relief can be granted, and further requests that his Motion to Dismiss as to
separate plaintiff Jared Davis be withdrawn.

                    Respectfully submitted,

                    MARK HUNTER

             By:

                    Don A. Taylor     #89139
                    Colin M. Johnson     #2007-189
                    DAVIS, CLARK, BUTT, CARITHERS
                      & TAYLOR, PLC
                    P.O. Box 1688
                    Fayetteville, AR 72702-1688
                    (479) 521-7600

**CERTIFICATE OF SERVICE**

I, Colin M. Johnson, certify that I have served the following counsel of record in the foregoing matter with a copy of this pleading by depositing the same in the United States Mail, postage prepaid, this 9th day of March, 2009.

Jason H. Wales
EVERETT & WALES
P.O. Box 8370
Fayetteville, AR 72703

Colin M. Johnson

5

IN THE CIRCUIT COURT OF WASHINGTON COUNTY, ARKANSAS
CIVIL DIVISION

JARED DAVIS and J2R, LLC                                                    PLAINTIFF

v.                                     Case No. CV-09-261-4

MARK HUNTER                                                                 DEFENDANT

## ANSWER

Comes now defendant Mark Hunter, by and through his attorneys, Don A. Taylor and Colin M. Johnson and the law firm of Davis, Clark, Butt, Carithers & Taylor, PLC and for his Answer to Plaintiffs' Complaint and First Amended Complaint, states and alleges as follows:

1.     Defendant is without sufficient knowledge to either admit or deny the allegations contained in paragraph 1 of Plaintiffs' First Amended Complaint and, therefore, denies the same.

2.     Defendant is without sufficient knowledge to either admit or deny the allegations contained in paragraph 2 of Plaintiffs' First Amended Complaint and, therefore, denies the same.

3.     Defendant admits that he is a resident of the State of Missouri.

4.     Defendant denies each and every allegation contained in paragraph 4 of Plaintiffs' First Amended Complaint.

5.     Defendant admits that this Court has jurisdiction and that venue is proper.

6.     Paragraph 6 of Plaintiffs' First Amended Complaint does not appear to require a response from Defendant, but to the extent that such a response is required, the allegations contained in paragraph 6 are denied.

7.     Defendant admits that on August 8, 2008, he traveled to Fayetteville, Arkansas, to deliver a cashier's check in the amount of $325,000.00 to a representative from General Motors Acceptance Corporation in exchange for the clear titles to 20 vehicles, which had been previously

held by Tim Hurd's Suzuki of Fayetteville as part of its used car inventory. Defendant is without sufficient knowledge to either admit or deny the allegations contained in paragraph 7 of Plaintiffs' First Amended Complaint as they apply to Impact 180, Inc. and J2R, LLC and, therefore, denies the same. Defendant denies all other allegations contained in paragraph 7 of Plaintiffs' First Amended Complaint.

8.      Defendant admits that on August 8, 2008, he traveled to Fayetteville, Arkansas, to deliver a cashier's check in the amount of $325,000 to a representative from General Motors Acceptance Corporation in exchange for the clear titles to 20 vehicles, which had been previously held by Tim Hurd's Suzuki of Fayetteville as part of its used car inventory. Defendant does not specifically recall wether the document referenced in paragraph 8 of Plaintiffs' First Amended Complaint was executed at that time or not, and must, therefore, deny the same. Defendant further states that the document referenced in paragraph 8 of Plaintiffs' First Amended Complaint largely speaks for itself, but specifically denies that Jared Davis was obligated to pay any interest thereunder. Defendant denies all other allegations contained in paragraph 8 of Plaintiffs' First Amended Complaint.

9.      Defendant denies each and every allegation contained in paragraph 9 of Plaintiffs' First Amended Complaint.

10.     Some of the allegations contained in paragraph 10 of Plaintiffs' First Amended Complaint purport to quote from Article 19, §13 of the Arkansas Constitution. To the extent that Plaintiffs' First Amended Complaint accurately quotes this constitutional provision, such allegations are admitted. To the extent Plaintiffs' First Amended Complaint does not accurately quote such provision, the allegations are denied. Defendant specifically denies that any interest was charged on

2

the alleged loan at issue.  Defendant is without sufficient knowledge to either admit or deny the remaining allegations contained in paragraph 10 of Plaintiffs' First Amended Complaint and, therefore, must deny the same.

11.     Defendant denies each and every allegation contained in paragraph 11 of Plaintiffs' First Amended Complaint.

12.     Paragraph 12 of Plaintiffs' First Amended Complaint does not appear to require a response from Defendant, but to the extent that such a response is required, the allegations contained in paragraph 12 are denied.

13.     Defendant denies each and every allegation contained in paragraph 13 of Plaintiffs' First Amended Complaint.

14.     Defendant denies each and every allegation contained in paragraph 14 of Plaintiffs' First Amended Complaint.

15.     Defendant denies each and every allegation contained in paragraph 15 of Plaintiffs' First Amended Complaint.

16.     Defendant denies each and every allegation contained in paragraph 16 of Plaintiffs' First Amended Complaint.

17.     Defendant denies each and every allegation contained in paragraph 17 of Plaintiffs' First Amended Complaint.

18.     Paragraph 18 of Plaintiffs' First Amended Complaint does not appear to require a response from Defendant, but to the extent that such a response is required, the allegations contained in paragraph 18 are denied.

19.     Defendant denies each and every allegation contained in paragraph 19 of Plaintiffs' First Amended Complaint.

20.     Defendant denies each and every allegation contained in paragraph 20 of Plaintiffs' First Amended Complaint.

21.     Defendant denies each and every allegation contained in paragraph 21 of Plaintiffs' First Amended Complaint.

22.     Defendant denies each and every allegation contained in paragraph 22 of Plaintiffs' First Amended Complaint.

23.     Defendant denies each and every allegation contained in paragraph 23 of Plaintiffs' First Amended Complaint.

24.     Defendant denies each and every allegation contained in Plaintiffs' Complaint and First Amended Complaint except for those allegations that are expressly and specifically admitted herein.

25.     Pleading in the affirmative, Defendant states that if Plaintiffs have been injured or damaged as alleged, which is denied, that such injuries and damages were proximately caused and bought about by Plaintiffs' own actions, or the actions of third parties, and were not caused or aggravated by any acts or inactions on the part of defendant Mark Hunter.

26.     Pleading in the affirmative, Defendant states that this Answer is being filed subject to his pending Motion to Dismiss as to separate plaintiff J2R, LLC, and should in no way be considered a withdrawal or waiver of any right or defense asserted therein.

27.    Pleading in the affirmative, Defendant states that each and every claim contained in Plaintiffs' Complaint and First Amended Complaint should be dismissed for failure to state a claim upon which relief can be granted.

28.    Pleading in the affirmative, Defendant states that the Plaintiffs' claims are precluded by the following defenses: statute of limitations, ambiguity of terms, cancellation, accord and satisfaction, release, fraud in inducement, waiver of rights, waiver of breach by acceptance, estoppel, mutual mistake, set-off, violation of statute of frauds, laches, ratification, Plaintiffs' default, rightful possession, possession in bailment, and abandonment.

29.    Pleading in the affirmative, Defendant reserves the right to amend this Answer and further reserves the right file any counterclaims, cross claims, or third party claims as may be necessary and appropriate upon completion of discovery in this matter.

30.    Defendant respectfully requests a jury trial.

WHEREFORE, defendant Mark Hunter, prays that Plaintiffs' Complaint and First Amended Complaint be dismissed with prejudice, for his costs and attorney fees, and for any further relief to which he may be entitled, whether specifically prayed for herein or not.

Respectfully submitted,

MARK HUNTER

By: _____

Don A. Taylor    #89139
Colin M. Johnson    #2007-189
DAVIS, CLARK, BUTT, CARITHERS
     & TAYLOR, PLC
P.O. Box 1688
Fayetteville, AR 72702-1688
(479) 521-7600

5

## CERTIFICATE OF SERVICE

I, Colin M. Johnson, certify that I have served the following counsel of record in the foregoing matter with a copy of this pleading by depositing the same in the United States Mail, postage prepaid, this _12th_ day of March, 2009.

Jason H. Wales
EVERETT & WALES
P.O. Box 8370
Fayetteville, AR 72703

Colin M. Johnson

6

## IN THE CIRCUIT COURT OF WASHINGTON COUNTY, ARKANSAS
## CIVIL DIVISION

JARED DAVIS and J2R, LLC                                    PLAINTIFF

v.                                  Case No. CV-09-261-4

MARK HUNTER                                                DEFENDANT

### REQUESTS FOR ADMISSIONS

Comes now, Defendant, Mark Hunter, and propounds the following Requests for Admissions

to Plaintiffs, Jared Davis and J2R, LLC, to be answered by Plaintiffs within the time and in the

manner prescribed by Rule 36 of the Arkansas Rules of Civil Procedure, to wit:

**REQUEST FOR ADMISSION NO. 1:**     Please admit that the contract attached hereto

as Exhibit "1" is a true and accurate copy of the contract entered into by separate plaintiff Jared

Davis and defendant Mark Hunter.

**REQUEST FOR ADMISSION NO. 2:**     Please admit that the contract attached hereto

as Exhibit "1" was drafted by separate plaintiff Jared Davis.

**REQUEST FOR ADMISSION NO. 3:**     Please admit that separate plaintiff J2R, LLC

is not listed, mentioned, described, designated, or otherwise identified in the contract attached hereto

as Exhibit "1".

**REQUEST FOR ADMISSION NO. 4:**     Please admit that the document attached hereto

as Exhibit "2" is a true and accurate copy of a list of the vehicles referred to in the last sentence of

paragraph 8 of Plaintiffs First Amended Complaint.

**REQUEST FOR ADMISSION NO. 5:**     Please admit that the document attached hereto

as Exhibit "2" was drafted by separate plaintiff Jared Davis.

**REQUEST FOR ADMISSION NO. 6:**    Please admit that the document attached hereto as Exhibit "2" bears the signature of separate plaintiff Jared Davis.

**REQUEST FOR ADMISSION NO. 7:**    Please admit that, according to the express language contained in the document attached hereto as Exhibit "2", the vehicles listed therein were sold to Suzuki of Springfield by Suzuki of Fayetteville, on August 8, 2008.

**REQUEST FOR ADMISSION NO. 8:**    Please admit that on August 8, 2008, defendant Mark Hunter delivered a cashier's check in the amount of $325,000.00 to a representative from General Motors Acceptance Corporation in exchange for the certificates of title to the vehicles listed in Exhibit "2".

**REQUEST FOR ADMISSION NO. 9:**    Please admit that the $325,000.00 paid to General Motors Acceptance Corporation represented the total wholesale value of the vehicles listed in Exhibit "2".

**REQUEST FOR ADMISSION NO. 10:**    Please admit that separate plaintiff Jared Davis and defendant Mark Hunter agreed that Suzuki of Fayetteville would maintain physical possession of the vehicles listed in Exhibit "2", during the term of the contract attached as Exhibit "1", while Suzuki of Springfield would maintain possession of the certificates of title to those vehicles.

**REQUEST FOR ADMISSION NO. 11:**    Please admit that in August of 2008, Suzuki of Fayetteville and separate plaintiff Jared Davis were unable to secure financing for various customers who wished to purchase vehicles off the lot at Suzuki of Fayetteville.

**REQUEST FOR ADMISSION NO. 12:**    Please admit that separate plaintiff Jared Davis and defendant Mark Hunter further agreed that vehicles sold on Suzuki of Fayetteville's lot would

2

be financed through Suzuki of Springfield, and Suzuki of Springfield would apply certain proceeds

of the transaction to separate plaintiff Jared Davis's balance.

**REQUEST FOR ADMISSION NO. 13:**     Please admit that, in securing financing for the

vehicles sold on Suzuki of Fayetteville's lot, Suzuki of Springfield put its relationship, reputation,

and goodwill with its lending institutions at risk due to potential defaults by Suzuki of Fayetteville's

customers.

**REQUEST FOR ADMISSION NO. 14:**     Please admit that any gap insurance policies or

extended service contracts sold by Suzuki of Fayetteville, and financed through Suzuki of

Springfield, were subject to cancellation by the respective customers.  In furtherance of your

response to this Request, please also admit that, in the event that a gap insurance policy or extended

service contract was cancelled by a customer, the amount of that respective product was chargeable

back to Suzuki of Springfield.

**REQUEST FOR ADMISSION NO. 15:**     Please admit that the documents attached hereto

as Exhibit "3" contain a true and accurate copy of a purchase order, dated 08/21/2008, from Suzuki

of Springfield for a 2008 Suzuki Reno, VIN: KL5JD66Z68K901378.  In furtherance of your

response to this Request, please admit that Exhibit "3" also contains a true and accurate copy of the

financing statement for said vehicle, which indicates that Suzuki of Springfield received a gross total

of $15,900.00.

**REQUEST FOR ADMISSION NO. 16:**     Please admit that the documents attached hereto

as Exhibit "4" contain a true and accurate copy of a purchase order, dated 08/23/2008, from Suzuki

of Springfield for a 2008 Dodge Ram, VIN: 1D7HA18N38S536646. In furtherance of you response

to this Request, please admit that Exhibit "4" also contains a true and accurate copy of the financing

3

statement for said vehicle, which indicates that Suzuki of Springfield received a gross total of $24,721.32.

**REQUEST FOR ADMISSION NO. 17:**     Please admit that the documents attached hereto as Exhibit "5" contain a true and accurate copy of a purchase order, dated 08/23/2008, from Suzuki of Springfield for a 2008 Suzuki Reno, VIN: KL5JD66Z58K905339.  In furtherance of your response to this Request, please admit that Exhibit "5" also contains a true and accurate copy of the financing statement for said vehicle, which indicates that Suzuki of Springfield received a gross total of $23,119.90.

**REQUEST FOR ADMISSION NO. 18:**     Please admit that the documents attached hereto as Exhibit "6" contain a true and accurate copy of a purchase order, dated 08/23/2008, from Suzuki of Springfield for a 2001 Chevrolet 2500, VIN: 1GCHK29U11E322004.  In furtherance of your response to this Request, please admit that Exhibit "6" also contains a true and accurate copy of the financing statement for said vehicle, which indicates that Suzuki of Springfield received a gross total of $14,635.00.

**REQUEST FOR ADMISSION NO. 19:**     With respect to the transaction referenced in Exhibit "6", please also admit that Suzuki of Springfield paid $450.00 to the customer as cash back on the deal.

**REQUEST FOR ADMISSION NO. 20:**     Please admit that the documents attached hereto as Exhibit "7" contain a true and accurate copy of a purchase order, dated 08/25/2008, from Suzuki of Springfield for a 2006 Dodge Caravan, VIN: 1D46P24R768694958.  In furtherance of your response to this Request, please admit that Exhibit "7" also contains a true and accurate copy of the

4

financing statement for said vehicle, which indicates that Suzuki of Springfield received a gross amount of $17,983.00.

**REQUEST FOR ADMISSION NO. 21:**   With respect to the transaction referenced in Exhibit "7", please admit that Suzuki of Springfield paid $12,738.80 to pay off a lien on the customer's traded in vehicle.  Please also admit that Suzuki of Springfield paid $451.20 to the customer, Jimmy Phelan, and also incurred $129.64 in vehicle inspection and repair costs.

**REQUEST FOR ADMISSION NO. 22:**   Please admit that the documents attached hereto as Exhibit "8" contain a true and accurate copy of a purchase order, dated 08/27/2008, from Suzuki of Springfield for a 2008 Suzuki SX4, VIN: JS2YC412385103712.  In furtherance of your response to this Request, please admit that Exhibit "8" also contains true and accurate copies of certain checks for said vehicle, which indicates that Suzuki of Springfield received a gross amount of $17,252.00.

**REQUEST FOR ADMISSION NO. 23:**   With respect to the transaction referenced in Exhibit "8", please also admit that Suzuki of Springfield paid $937.41 to pay off a lien on the customer's traded in vehicle.

**REQUEST FOR ADMISSION NO. 24:**   Please admit that the documents attached hereto as Exhibit "9" contain a true and accurate copy of a purchase order, dated 08/28/2008, from Suzuki of Springfield for a 2008 Suzuki Grand Vitara, VIN: JS3TE941284103691.  In furtherance of your response to this Request, please admit that Exhibit "9" also contains a true and accurate copy of the financing statement for said vehicle, which indicates that Suzuki of Springfield received a gross amount of $15,307.00.

**REQUEST FOR ADMISSION NO. 25:**   Please admit  that  the vehicles sold in the transactions referenced in Exhibits "3", "4", "5", "6", "7", "8", and "9", were the only such sales

5

occurring between August 8, 2008, and August 31, 2008, whereby certain proceeds were to be applied to separate plaintiff Jared Davis's obligation, as described in Exhibit "1".

**REQUEST FOR ADMISSION NO. 26:**    Please admit that the documents attached hereto as Exhibit "10" contain a true and accurate copy of a purchase order, dated 09/09/2008, from Suzuki of Springfield for a 2007 Toyota FJ Cruiser, VIN: JTEBU11F670015419.  In furtherance of your response to this Request, please admit that Exhibit "10" also contains a true and accurate copy of the financing statement for said vehicle, which indicates that Suzuki of Springfield received a gross amount of $20,412.00.

**REQUEST FOR ADMISSION NO. 27:**    With respect to the transaction referenced in Exhibit "10", please also admit that Suzuki of Springfield paid $1,230.00 to the customer, Dominique Mitchell, for the sales tax on the vehicle.

**REQUEST FOR ADMISSION NO. 28:**    Please admit that the documents attached hereto as Exhibit "11" contain a true and accurate copy of a purchase order, dated 09/10/2008, from Suzuki of Springfield for a 2000 Dodge Caravan, VIN: 2B4GP2531YR626714.  In furtherance of your response to this Request, please admit that Exhibit "11" also contains a true and accurate copy of the financing statement for said vehicle, which indicates that Suzuki of Springfield received a gross amount of $5,202.00.

**REQUEST FOR ADMISSION NO. 29:**    Please admit that the documents attached hereto as Exhibit "12" contain a true and accurate copy of a purchase order, dated 09/17/2008, from Suzuki of Springfield for a 2006 Jeep Grand Cherokee, VIN: 1J8GS48K08C127176.  In furtherance of your response to this Request, please admit that Exhibit "12" also contains a true and accurate copy of the

bank disbursement check for said vehicle, which indicates that Suzuki of Springfield received a gross amount of $22,250.50.

**REQUEST FOR ADMISSION NO. 30:**   With respect to the transaction referenced in Exhibit "12", please also admit that Suzuki of Springfield paid $2,512.00 to the customer, Anrok Laibwij, as cash back for sales tax on the vehicle.

**REQUEST FOR ADMISSION NO. 31:**   Please admit that the documents attached hereto as Exhibit "13" contain a true and accurate copy of a purchase order, dated 09/17/2008, from Suzuki of Springfield for a 2002 GMC Yukon, VIN: 1GKFK66U02J314816.   In furtherance of your response to this Request, please admit that Exhibit "13" also contains a true and accurate copy of the bank disbursement check for said vehicle, which indicates that Suzuki of Springfield received a gross amount of $14,943.50.

**REQUEST FOR ADMISSION NO. 32:**   Please admit that the documents attached hereto as Exhibit "14" contain a true and accurate copy of a purchase order, dated 09/23/2008, from Suzuki of Springfield for a 2008 Suzuki SX4, VIN: JS2YB413385110350.  In furtherance of your response to this Request, please admit that Exhibit "14" also contains a true and accurate copy of the financing statement for said vehicle, which indicates that Suzuki of Springfield received a gross amount of $17,693.00.

**REQUEST FOR ADMISSION NO. 33:**   With respect to the transaction referenced in Exhibit "14", please also admit that Suzuki of Springfield paid $1,619.19 to the customer, Dean Archer, as cash back for sales tax on the vehicle.

**REQUEST FOR ADMISSION NO. 34:**   Please admit that the documents attached hereto as Exhibit "15" contain a true and accurate copy of a purchase order, dated 09/23/2008, from Suzuki

of Springfield for a 2008 Suzuki Grand Vitara, VIN: JS3TE944484102214. In furtherance of your response to this Request, please admit that Exhibit "15" also contains a true and accurate copy of the financing statement for said vehicle, which indicates that Suzuki of Springfield received a gross amount of $27,807.00.

**REQUEST FOR ADMISSION NO. 35:**   With respect to the transaction referenced in Exhibit "15", please also admit that Suzuki of Springfield paid $17,508.41 to pay off a lien on the customer's traded in vehicle.

**REQUEST FOR ADMISSION NO. 36:**   Please admit that the documents attached hereto as Exhibit "16" contain a true and accurate copy of a purchase order, dated 09/26/2008, from Suzuki of Springfield for a 2008 Chevrolet Silverado, VIN: 1GCEC14C28Z221677. In furtherance of your response to this Request, please admit that Exhibit "16" also contains a true and accurate copy of the financing statement for said vehicle, which indicates that Suzuki of Springfield received a gross amount of $18,783.90.

**REQUEST FOR ADMISSION NO. 37:**   With respect to the transaction referenced in Exhibit "16", please also admit that Suzuki of Springfield paid $1,177.88 to the customer, Don Reed, for the sales tax on the vehicle.

**REQUEST FOR ADMISSION NO. 38:**   Please admit that the documents attached hereto as Exhibit "17" contain a true and accurate copy of a purchase order, dated 10/01/2008, from Suzuki of Springfield for a 2006 Dodge Ram, VIN: 1D7HA18N16S543365. In furtherance of your response to this Request, please admit that Exhibit "17" also contains a true and accurate copy of the financing statement for said vehicle, which indicates that Suzuki of Springfield received a gross amount of $19,104.00.

8

**REQUEST FOR ADMISSION NO. 39:**    Please admit that the documents attached hereto as Exhibit "18" contain a true and accurate copy of a purchase order, dated 10/02/2008, from Suzuki of Springfield for a 2008 Suzuki Forenza, VIN: KL5JD56Z18K747382.  In furtherance of your response to this Request, please admit that Exhibit "18" also contains a true and accurate copy of the financing statement for said vehicle, which indicates that Suzuki of Springfield received a gross amount of $15,213.00.

**REQUEST FOR ADMISSION NO. 40:**    Please admit that the documents attached hereto as Exhibit "19" contain a true and accurate copy of a purchase order, dated 10/03/2008, from Suzuki of Springfield for a 2007 Dodge Ram, VIN: 1D7HA18P97S173138.  In furtherance of your response to this Request, please admit that Exhibit "19" also contains a true and accurate copy of the financing statement for said vehicle, which indicates that Suzuki of Springfield received a gross amount of $16,577.00.

**REQUEST FOR ADMISSION NO. 41:**    With respect to the transaction referenced in Exhibit "19", please also admit that Suzuki of Springfield paid $364.00 to the customer, Don Reed, as cash back on the deal.

**REQUEST FOR ADMISSION NO. 42:**    Please admit that the documents attached hereto as Exhibit "20" contain a true and accurate copy of a purchase order, dated 10/06/2008, from Suzuki of Springfield for a 2006 Dodge Grand Caravan, VIN: 2D4GP44L26R626334.  In furtherance of your response to this Request, please admit that Exhibit "20" also contains a true and accurate copy of the financing statement for said vehicle, which indicates that Suzuki of Springfield received a gross amount of $13,458.00.

9

**REQUEST FOR ADMISSION NO. 43:**   With respect to the transaction referenced in Exhibit "20", please also admit that Suzuki of Springfield paid $100.00 to Linda Catron as a referral fee for referring customer, Thelma Leach.

**REQUEST FOR ADMISSION NO. 44:**   Please admit that the documents attached hereto as Exhibit "21" contain a true and accurate copy of a purchase order, dated 10/09/2008, from Suzuki of Springfield for a 2000 Ford Windstar, VIN: 2FMZA5240YBB60113.  In furtherance of your response to this Request, please admit that Exhibit "21" also contains a true and accurate copy of the financing statement for said vehicle, which indicates that Suzuki of Springfield received a gross amount of $4,478.00.

**REQUEST FOR ADMISSION NO. 45:**   Please admit that the vehicles sold in the transactions referenced in Exhibits "10", "11", "12", "13", "14", "15", "16", "17", "18", "19", "20", and "21", were the only such sales occurring between September 1, 2008, and October 9, 2008, whereby certain proceeds were to be applied to separate plaintiff Jared Davis's balance.

**REQUEST FOR ADMISSION NO. 46:**   Please admit that after October 9, 2008, there were no other occasions in which any vehicles were sold on Suzuki of Fayetteville's lot, yet financed through Suzuki of Springfield.

**REQUEST FOR ADMISSION NO. 47:**   Please admit that each transaction referenced in Exhibits "3" through "21" was subject to a standard administrative fee of $199.50, which was deducted from the amount applied to separate plaintiff Jared Davis's balance.

**REQUEST FOR ADMISSION NO. 48:**   Please admit that, with respect to the transactions referenced in Exhibits "3" through "21", any payments made by Suzuki of Springfield in the form of cash back on a deal, cash back for sales tax, customer referral fees, customer goodwill

10

payments, or any other payment made to Suzuki of Fayetteville's customers, was to be deducted from the amount applied to separate plaintiff Jared Davis's balance.

**REQUEST FOR ADMISSION NO. 49:**   Please   admit that, with respect to the transactions referenced in Exhibits "3" through "21", any payments made by Suzuki of Springfield to pay off liens on vehicles traded-in by Suzuki of Fayetteville's customers, were to be deducted from the amount to be applied to separate plaintiff Jared Davis's balance.

**REQUEST FOR ADMISSION NO. 50:**   Please   admit   that, with respect to the transactions referenced in Exhibits "3" through "21", any gap insurance policies or extended service contracts sold by Suzuki of Fayetteville, and financed through Suzuki of Springfield, were not intended to be applied to Jared Davis's balance.

**REQUEST FOR ADMISSION NO. 51:**    Please admit that, in consideration for the risk assumed by Suzuki of Springfield in securing financing for Suzuki of Fayetteville's customers, as well as the time, effort, and expense associated with securing such financing and executing the paperwork, Suzuki of Springfield was to receive certain compensation.

**REQUEST FOR ADMISSION NO. 52:**    Please admit Suzuki of Springdale released the certificates of title to the following vehicles in exchange for a $269,227.00 check from Suzuki of Fayetteville:

| Year | Description | VIN (last 6 digits) |
|------|-------------|---------------------|
| 2008 | Volkswagen Passat | 065189 |
| 2007 | Chevy Tahoe | 141224 |
| 2006 | Chrysler 300 | 251607 |
| 2004 | Chevy Tahoe | 293330 |
| 2006 | Dodge Dakota | 583534 |
| 2006 | Ford Explorer | A24753 |

11

**REQUEST FOR ADMISSION NO. 53:**     Please admit that said $269,227.00 check issued by Suzuki of Fayetteville was returned for insufficient funds, as evidenced by the documents attached hereto as Exhibit "22".

**REQUEST FOR ADMISSION NO. 54:**     Please admit that, despite the fact that Suzuki of Fayetteville's $269,227.00 check was returned for insufficient funds, the certificates of title referenced in Request for Admission No. 52 were never returned to Suzuki of Springfield.

**REQUEST FOR ADMISSION NO. 55:**     Please admit that after Suzuki of Fayetteville's $269,227.00 check was returned for insufficient funds, Suzuki of Springfield took physical possession of the following vehicles:

| Year | Description | VIN (last 6 digits) |
|------|-------------|---------------------|
| 2008 | Ford F-150 | A97845 |
| 2004 | Ford Explorer | A20584 |
| 2008 | Chevy Corvette | 116610 |
| 2008 | Chrysler Town & Country | 125955 |
| 2008 | Pontiac G6 | 157562 |
| 2008 | Volkswagen Passat | 046732 |
| 2007 | Cadillac Escalade | 163892 |
| 2008 | Ford Super Duty | A60243 |
| 2006 | Ford Truck | 294138 |

**REQUEST FOR ADMISSION NO. 56:**     Please admit that Jared Davis failed to reimburse Defendant Mark Hunter for the $325,000.00 he paid to General Motors Acceptance Corporation, by August 31, 2008.

Respectfully submitted,

MARK HUNTER

By: _____

Don A. Taylor / #89139
Colin M. Johnson     #2007-189
DAVIS, CLARK, BUTT, CARITHERS
    & TAYLOR, PLC
P.O. Box 1688
Fayetteville, AR 72702-1688
(479) 521-7600


## CERTIFICATE OF SERVICE

    I, Colin M. Johnson, certify that I have served the following counsel of record in the foregoing matter with a copy of this pleading by depositing the same in the United States Mail, postage prepaid, this _9th_ day of April, 2009.

Jason H. Wales
EVERETT & WALES
P.O. Box 8370
Fayetteville, AR 72703

_____

Colin M. Johnson

13

08-08-2008

I Jared Davis will pay Mark Hunter  355,000 dollars in full on or before August 31, 2008 for reimbursement of loan of 325,000 dollars that was consummated on August 08, 2008 and Mark Hunter will hold all titles and as I, Jared Davis pays a title off Mark Hunter agrees to release title on payment. If not paid in full on August 31, 2008 Mark hunter will own all titles and automobiles due to default.

Jared Davis

Mark Hunter

**EXHIBIT**

**1**

**Suzuki of Fayetteville is selling the following vehicles to Suzuki of Springfield on August 8, 2008:**

| | | | | |
|---|---|---|---|---|
| P936 | 2007 | Toyota FJ Cruiser | 27,508 miles | 70015419 |
| 2949 | 2008 | Volkswagen Passat | 22,638 miles | 8P046732 |
| 2950 | 2008 | Volkswagen Passat | 25,336 miles | 8P065189 |
| 2943 | 2008 | Chevrolet Corvette | 2,221 miles | 85116610 |
| 2954 | 2008 | Chrysler Town/Country | | 8R125955 |
| P895 | 2007 | Chevrolet Tahoe K1500 | 45,941 miles | 7R141224 |
| 2941 | 2008 | Pontiac G6 | 18,993 miles | 84157562 |
| P937 | 2007 | Cadillac Escalade | 39,191 miles | 7G163892 |
| 2945 | 2007 | Dodge Ram | 31,943 miles | 7S173138 |
| 2951 | 2008 | Chevrolet Silverado | 1,001 miles | 8Z221677 |
| P901 | 2006 | Chrysler 300 | 27,438 miles | 6H251607 |
| P920 | 2004 | Chevrolet Tahoe K1500 | 61,323 miles | 4J293330 |
| P877 | 2005 | Dodge Dakota | 44,951 miles | 6S583534 |
| 2955 | 2008 | Dodge Caravan | | 8R606360 |
| 2947 | 2004 | Ford Explorer | 36,853 miles | 4UA20584 |
| P939 | 2006 | Ford Explorer | 30,746 miles | 6ZA24753 |
| P927 | 2008 | Super Duty | 17,867 miles | 8EA60243 |
| 2957 | 2008 | Lgt Convtnl | | 8FA97845 |
| P881 | 2006 | Lgt Convtnl | 33,281 miles | 6V294138 |
| 2948 | 2008 | Dodge Ram truck | 17,409 miles | 8S536646 |

**Amount:**                    **$325,000**

Jared Davis



EXHIBIT
2

**Suzuki of Springfield** — PURCHASE ORDER

3310 S. Campbell • Springfield, MO 65807 • Phone: 417.888.5555 • Fax: 417.888.5500

| DATE | 08/21/2008 | INV. NO. |
|---|---|---|

PLEASE ENTER MY ORDER FOR THE FOLLOWING

☐ DEMO ☒ NEW ☐ USED ☐ CAR ☐ TRUCK

MR. MRS. MS **STACY COTTRELL SHARRION ROGERS**

PURCHASER'S NAME

| YEAR | MAKE | MODEL NO. | TYPE |
|---|---|---|---|
| 2008 | SUZUKI | RENO | SEDAN |

7411 DEAN RD

STREET ADDRESS

| COLOR | TRIM | MILEAGE | 13 |
|---|---|---|---|

| ALMA | AR | 72921 |
|---|---|---|
| CITY | | ZIP |

000-000-0000

SALESMAN

TO BE DELIVERED ON OR ABOUT 08/21/2008

SERIAL NO. K L 5 J D 6 6 Z 6 8 K 9 0 1 3 7 8

COUNTY   BUS. PHONE   RES. PHONE

IF PURCHASE OF VEHICLE IS TO BE FINANCED, DISCLOSURE OF THE FINANCE AND RELATED CHARGES WILL BE CONTAINED IN THE RETAIL INSTALLMENT CONTRACT-SECURITY AGREEMENT BETWEEN THE CUSTOMER AND THE LENDING INSTITUTION. THIS CONTRACT IS SUBJECT TO THIRD PARTY FINANCING AND OR LEASE.

BASE MODEL PRICE

TRANSPORTATION

OPT'I

THIS SALE AND ALL RELATED DOCUMENTS CONTINGENT UPON 3RD PARTY FINANCIAL APPROVAL PER FOLLOWING TERMS AND CONDITIONS.   EQUIPPED AS AGREED UNLESS THIS IS A CASH TRANSACTION OR AN OUTSIDE LIEN.

TO WHOM IT MAY CONCERN:

I,

TOOK DELIVERY OF RENO | 16198.00

KL5JD66Z68K901378

SIGNED: _____

DLR. REP.: _____

Tfrak Card tich #

**TRADE-IN INFORMATION**

| YEAR | MAKE | MODEL | MILEAGE |
|---|---|---|---|

VEHICLE IDENT. NUMBER

BALANCE OWED TO:

ADDRESS

TITLE AT   VERIFIED BY

BALANCE OWED N/A   GOOD UNTIL

RECORDS LIEN

YES ____ NO ____   VERIFIED ____

LIENHOLDER   COMMERCE BANK
              PO BOX 413650

ADDRESS KANSAS CITY   MO   64141

CITY   STATE

PURCHASER

**CUSTOMER'S CERTIFICATION & DEALER DISCLOSURE**
I DO CERTIFY THAT:

1. All of the terms and conditions of this agreement are stated on the front and back sides of this form. There are no other contracts, promises, or understandings, written or spoken, in addition to those stated in this agreement. This agreement cancels and takes the place of any other agreement or understanding between Customer and Dealer before the date written above. When Dealer signs this document, it, together with the other written sale and finance documents, then becomes the complete and only agreement between us.

2. The only important defects I know about in the motor vehicle being traded in to the dealer are:

_____
(if there are no defects, write NONE)

3. I have read the front and back sides of this form and I have received a true copy of it.

4. This contract is not binding upon the Dealer until signed by an authorized representative. Buyer may cancel this contract and receive full refund anytime before receipt of a copy of this contract signed by the authorized Dealer representative by giving written notice of cancellation to the Dealer.

5. The seller of this vehicle (has) (has not) performed a title search for the motor vehicle being sold for purposes of determining the accuracy of the mileage shown on the odometer or for any other purpose. Purchaser acknowledges receipt of this disclosure.

6. The seller discloses that this motor vehicle (has) (has not) been used as a driver training, leased or rented motor vehicle by the last owner or user of the vehicle prior to this sale. Purchaser acknowledges receipt of this disclosure.

| CUSTOMER PREDELIVER PREP. CHG. | | |
|---|---|---|
| Administrative Fee | 199 | 50 |
| CLEAN FEE | 2 | 50 |
| SUB TOTAL | 16198.00 | |
| TAX | | |

| 1. CASH PRICE (INCLUDING ANY ACCESSORIES, SERVICES AND TAXES IMPOSED ON CASH SALES) | | 16198.00 |
|---|---|---|
| 2. CASH DOWN PAYMENT | FACTORY CASH | 500.00 |
| | DEPOSIT ON ORDER | N/A |
| | CASH ON DELIVERY | N/A |
| 3. TRADE-IN | | N/A |
| 4. LESS PAYOFF AMOUNT | | .00 |
| 5. NET DOWN PAYMENT (2 + 4) | | 500.00 |
| 6. UNPAID BALANCE OF CASH PRICE (1 - 5) | | 15900.00 |
| 7. TOTAL CASH BALANCE DUE ON DELIVERY | | 15900.00 |

Arbitration: It is agreed that the Customer and Dealer ("Parties") shall submit to binding and final arbitration all claims, disputes, demands, causes of action or controversies between each other or between any officers, directors, agents, employees of Dealer and Customer that arise out of or relate to: (1) any warranty or workmanship of a vehicle; (2) any work or repair order concerning a vehicle; (3) any sale, lease, repair, or financing agreement relating to a vehicle; (4) breach of contract, misrepresentation, fraud, concealment, conversion, and state and federal statutory or common law claims for unfair and deceptive trade practices against the Dealer or any officers, directors, agents, employees, or assignees of the Dealer; (5) false or misleading advertising; (6) any federal, state or local consumer protection statute, including but not limited to any truth-in-lending, truth-in-leasing, truth-in-financing, and truth-in-advertising statute; (7) monies owed by Customer in connection with the purchase, lease, financing or repair of vehicle; (8) condition of the vehicle; (9) any purchase of insurance; (10) any purchase of any warranty.  And (11) the scope and validity of this contract. The final and binding arbitration shall be conducted before JAMS or its successor. The arbitration shall be conducted by one neutral Arbitrator ("Arbitrator") selected from a list of arbitrators provided by JAMS, and shall be governed by the JAMS Comprehensive Arbitration Rules and Procedures in effect at that time. This agreement to arbitrate shall not in any way extend or shorten the applicable legal statutes of limitation. Commencement of an arbitration under this Agreement shall comply with the JAMS Comprehensive Arbitration Rules and Procedures in effect at that time. Nothing in this mutual agreement to arbitrate shall require Dealer to submit to arbitration claims against Customer for claim and delivery, repossession, or injunctive relief, and Dealer's claims for these remedies shall not be strayed pending the outcome of the arbitration. The Arbitrator shall apply the applicable substantive and remedies laws, and may award any remedies allowed by applicable law.  The agreement to arbitrate also applies to class action litigation. Nothing in this paragraph shall prohibit or limit the Parties from seeking injunctive relief from a court of competent jurisdiction at any time in lieu of or in addition to arbitration. The Arbitrator cannot and shall not modify any of the provisions of this agreement to arbitrate. The costs associated with an arbitration under this agreement to arbitrate shall be shared equally by Customer and Dealer except each party is responsible for the costs which a party would have been required to bear had the matter been filed in a court. However, the Arbitrator may award attorney's fees and costs to the prevailing party as authorized by law. (Only if not contained within dealer's agreement elsewhere): If any provision of this agreement to arbitrate held invalid or unenforceable, the remainder of the Agreement which can be given effect without the invalid or unenforceable provision shall continue in full force and effect and shall in no way be impaired or invalidated.) This agreement may be enforced by any Court of competent jurisdiction, and the party seeking enforcement shall be entitled to an award of all costs, fees and expenses, including attorney's fees, to be paid by the party against whom enforcement is ordered. The Parties acknowledge that they have carefully read this Agreement, understand its terms, agreed to be bound by them, and that each has entered into this Agreement knowingly and voluntarily. PLEASE READ CAREFULLY. BY INITIALING THIS PROVISION, YOU ARE GIVING UP YOUR RIGHT TO FILE A LAWSUIT IN A COURT OF LAW AND TO HAVE YOUR MATTER HEARD BY A JUDGE AND/OR JURY. X ____

| Stacy Cottrell | 08/21/2008 | Sharrion Rogers | 08/21/ |
|---|---|---|---|
| PURCHASER'S SIGNATURE | DATE | CO-PURCHASER'S SIGNATURE | DATE |

ACCEPTED BY MANAGER OR

(DEALER OR AUTHORIZED REPRESENTATIVE)

Form No. SUB/PF - 101 (2/93)

**EXHIBIT 3**

exhibitsticker.com

 

# Commerce Bank

**Confidentiality Statement:** The information contained in this facsimile is privileged and confidential information intended for the sole use of the addressee. If you are not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this fax in error, please immediately notify the person listed above, and return the original message to the sender at the address listed above.

**To:**    89073 - Tracy Fay
            89073 - Suzuki of Springfiled
**Fax:**    14178909222

**From:**   Aimryal Pennington
            Commerce Bank

**Date:**   9/2/2008 3:14 PM
**Pages:**  1 of 1 (including this page)
**Subject:**

**Comments:** Customer Name    Reserve Amount    Amount Financed
COTTRELL, STACY $677.25        $15,900.00

Dealer Total  $15,900.00

08 Reno 901378

STOCK 1162

93
posted per
shelly
@BC

#1162 08 Reno  (SOF Deal)

# *Suzuki of Springfield* PURCHASE ORDER

3310 S. Campbell • Springfield, MO 65807 • Phone: 417.889.6555 • Fax: 417.889.8599

DATE 08/23/2008    INV NO.

**PLEASE ENTER MY ORDER FOR THE FOLLOWING**

☐ DEMO  ☐ NEW  ☒ USED  ☐ CAR  ☒ TRUCK

MR. MRS. MS **APRIL MONTGOMERY**

PURCHASER'S NAME **1503 W SYCAMORE**

STREET ADDRESS **ROGERS**   **AR**   **72758**
CITY

**USD-000-0000** ZIP

| YEAR | MAKE | MODEL | TYPE |
|------|------|-------|------|
| 2008 | DODGE | RAM 1500 | |

COLOR **RED**  TRIM  MILEAGE **18222**

SALESMAN  TO BE DELIVERED ON OR ABOUT **08/23/2008**

SERIAL NO. **1D7HA18N38S536646**

COUNTY   BUS. PHONE   RES. PHONE

IF PURCHASE OF VEHICLE IS TO BE FINANCED, DISCLOSURE OF THE FINANCE AND RELATED CHARGES WILL BE CONTAINED IN THE RETAIL INSTALLMENT CONTRACT-SECURITY AGREEMENT BETWEEN THE CUSTOMER AND THE LENDING INSTITUTION. THIS CONTRACT IS SUBJECT TO THIRD PARTY FINANCING AND OR LEASE.

BASE MODEL PRICE   22472.00

TRANSPORTATION

OPT.

THIS SALE AND ALL RELATED DOCUMENTS CONTINGENT UPON 3RD PARTY FINANCIAL APPROVAL PER FOLLOWING TERMS AND CONDITIONS. _____ EQUIPPED AS AGREED UNLESS THIS IS A CASH TRANSACTION OR AN OUTSIDE LIEN.

**TRADE-IN INFORMATION**

| YEAR | MAKE | MODEL | MILEAGE |
|------|------|-------|---------|

VEHICLE IDENT. NUMBER

BALANCE OWED TO:

ADDRESS   00000-0000

TITLE AT   VERIFIED BY

BALANCE OWED **N/A**   GOOD UNTIL

RECORD LIEN

YES   NO **COMMERCE BANK**   VERIFIED

LIENHOLDER **PO BOX 113658**

ADDRESS **KANSAS CITY**   **MO**   **64141**

CITY   STATE

PURCHASER

**CUSTOMER'S CERTIFICATION & DEALER DISCLOSURE**
I DO CERTIFY THAT:

1. All of the terms and conditions are stated on the front and back sides of this form...

2. The only important defects I know about in the motor vehicle being traded in to the dealer are:

3. I have read the front and back sides of this form and I have received a true copy of it.

4. This contract is not binding upon the Dealer until signed by an authorized representative...

5. The seller of this vehicle (has) (has not) performed a title search...

6. The seller discloses that this motor vehicle (has) (has not) been used as a driver training, leased or rented motor vehicle...

TO WHOM IT MAY CONCERN:
I, _____ TOOK DELIVERY OF A **DODGE RAM 1500**   22472.00
**1D7HA18N38S536646**

SIGNED: _____

DLR. REP.: _____

| GAP | | 699.00 |
|-----|-|--------|

CUSTOMER PREDELIVER PREP. CHG.

Administrative Fee   199.50

LIEN FEE   2.50

SUB TOTAL   1318.56

TAX

| | | |
|---|---|---|
| 1. CASH PRICE (INCLUDING ANY ACCESSORIES, SERVICES AND TAXES IMPOSED ON CASH SALE.) | | 24721.32 |
| 2. CASH DOWN PAYMENT | FACTORY CASH | N/A |
| | DEPOSIT ON ORDER | N/A |
| | CASH ON DELIVERY | N/A |
| 3. TRADE-IN | | N/A |
| 4. LESS PAYOFF AMOUNT | N/A | .00 |
| 5. NET DOWN PAYMENT (2 - 4) | | N/A |
| 6. UNPAID BALANCE OF CASH PRICE (1- 5) | | 24721.32 |
| 7. TOTAL CASH BALANCE DUE ON DELIVERY | | 24721.32 |

Arbitration: It is agreed that the Customer and Dealer ("Parties") shall submit to binding and final arbitration all claims, disputes, demands, causes of action or controversies between each other or between any officers, directors, agents, employees of Dealer and Customer that arise out of or relate to: (1) any warranty or workmanship of a vehicle; (2) any work or repair order concerning a vehicle; (3) any sale, lease, repair, or financing agreement relating to a vehicle; (4) breach of contract, misrepresentation, fraud, concealment, conversion, and state and federal statutory or common law claims for unfair and deceptive trade practices against the Dealer or any officers, directors, agents, employees, or assignees of the Dealer; (5) false or misleading advertising; (6) any federal, state or local consumer protection statute, including but not limited to any truth-in-lending, truth-in-leasing, truth-in-financing, and truth-in-advertising statute; (7) monies owed by Customer in connection with the purchase, lease, financing or repair of vehicle; (8) condition of the vehicle; (9) any purchase of insurance; (10) any purchase of any warranty. And (11) the scope and validity of this contract. The final and binding arbitration shall be submitted before JAMS or its successor. The arbitration shall be conducted by one neutral Arbitrator ("Arbitrator") selected from a list of arbitrators provided by JAMS, and shall be governed by the JAMS Comprehensive Arbitration Rules and Procedures in effect at that time. This agreement to arbitrate shall not in any way extend or shorten the applicable legal statutes or limitation. Commencement of an arbitration under this Agreement shall comply with the JAMS Comprehensive Arbitration Rules and Procedures in effect at that time. Nothing in this mutual agreement to arbitrate shall require Dealer to submit to arbitration claims against Customer for claim and delivery, repossession, or injunctive relief, and Dealer's claims for these remedies shall not be stayed pending the outcome of the arbitration. The Arbitrator shall apply the applicable substantive and remedies laws, and may award any remedies allowed by applicable law. The agreement to arbitrate also applies to class action litigation. Nothing in this paragraph shall prohibit or limit the Parties from seeking injunctive relief from a court of competent jurisdiction at any time in lieu of or in addition to arbitration. The Arbitrator cannot and shall not modify any of the provisions of this agreement to arbitrate. The costs associated with an arbitration under this agreement to arbitrate shall be shared equally by Customer and Dealer except each party is responsible for the costs which a party would have been required to bear had the matter been filed in a court. However, the Arbitrator may award attorney's fees and costs to the prevailing party as authorized by law. [Only if not contained within dealer's agreement elsewhere: If any provision of this agreement to arbitrate held invalid or unenforceable, the remainder of the Agreement which can be given effect without the invalid or unenforceable provision shall continue in full force and effect and shall in no way be impaired or invalidated.] This agreement may be enforced by any Court of competent jurisdiction, and the party seeking enforcement shall be entitled to an award of all costs, fees and expenses, including attorney's fees, to be paid by the party against whom enforcement is ordered. The Parties acknowledge that they have carefully read this Agreement, understand its terms, agreed to be bound by them, and that each has entered into this Agreement knowingly and voluntarily. PLEASE READ CAREFULLY. BY INITIALING THIS PROVISION, YOU ARE GIVING UP YOUR RIGHT TO FILE A LAWSUIT IN A COURT OF LAW AND TO HAVE YOUR MATTER HEARD BY A JUDGE AND/OR JURY. X

ACCEPTED BY MANAGER

X _____  08/23/2008
PURCHASER'S SIGNATURE   DATE   CO-PURCHASER'S SIGNATURE   DATE   (DEALER OR AUTHORIZED REPRESENTATIVE)



EXHIBIT
**4**



**Confidentiality Statement:** The information contained in this facsimile is privileged and confidential information intended for the sole use of the addressee. If you are not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this fax in error, please immediately notify the person listed above, and return the original message to the sender at the address listed above.

**To:** 89073 - Tracy Fay
89073 - Suzuki of Springfiled
**Fax:** 14178909222

**From:** Aimryal Pennington
Commerce Bank

**Date:** 9/3/2008 3:12 PM
**Pages:** 1 of 1 (including this page)
**Subject:**

**Comments:** Customer Name   Reserve Amount   Amount Financed
MONTGOMERY, APRIL   $1,251.18   $24,721.32

9-4-08
Montgomery, 08 Ram 5238

**Suzuki of Springfield**   PURCHASE ORDER

3318 S. Campbell • Springfield, MO 65807 • Phone: 417.889.6555 • Fax: 417.889.8590

| | |
|---|---|
| DATE | 08/23/2008 |
| | INV NO |

PLEASE ENTER MY ORDER FOR THE FOLLOWING

| ☐ DEMO | XX ☐ NEW | ☐ USED | ☐ CAR | XX ☐ TRUCK |
|---|---|---|---|---|

MR. / MRS. / MS.   NORMA BUSH

233 JAN ELAINE   PURCHASER'S NAME   STREET ADDRESS

SPRINGDALE   CITY   AR   72764   ZIP

COUNTY   BUS. PHONE   000-000-0000   RES. PHONE

| YEAR 2008 | MAKE SUZUKI | MODEL RENO | TYPE |
|---|---|---|---|
| COLOR | TRIM | MILEAGE 332 | |

STOCK NO.   SALESMAN   TO BE DELIVERED ON OR ABOUT 08/23/2008

SERIAL NO.

| K | L | 5 | J | D | 6 | 6 | Z | 5 | 8 | K | 9 | 0 | 5 | 3 | 3 | 9 |

IF PURCHASE OF VEHICLE IS TO BE FINANCED, DISCLOSURE OF THE FINANCE AND RELATED CHARGES WILL BE CONTAINED IN THE RETAIL INSTALLMENT CONTRACT-SECURITY AGREEMENT BETWEEN THE CUSTOMER AND THE LENDING INSTITUTION. THIS CONTRACT IS SUBJECT TO THIRD PARTY FINANCING AND OR LEASE.

BASE MODEL PRICE   18970.00

TRANSPORTATION

OPT F   THIS SALE AND ALL RELATED DOCUMENTS CONTINGENT UPON 3RD PARTY FINANCIAL APPROVAL PER FOLLOWING TERMS AND CONDITIONS.   EQUIPPED AS AGREED UNLESS THIS IS A CASH TRANSACTION OR AN OUTSIDE LIEN.

TO WHOM IT MAY CONCERN:

I,

TOOK DELIVERY OF A   RENO   18970.00

2008 DELUXE

KL5JD66Z58K905339

SIGNED: _____

DLR. REP.: _____

(Thank Card Each #

**TRADE-IN INFORMATION**

| YEAR | MAKE | MODEL | MILEAGE |
|---|---|---|---|

VEHICLE IDENT NUMBER

BALANCE OWED TO:

ADDRESS   -

TITLE AT   VERIFIED BY

BALANCE OWED N/A   GOOD UNTIL:

RECORD LIEN

YES   NO   VERIFIED

LIENHOLDER   COMMERCE BANK
PO BOX 413658

ADDRESS KANSAS CITY   MO   64141   STATE

PURCHASER

**CUSTOMER'S CERTIFICATION & DEALER DISCLOSURE**
I DO CERTIFY THAT:

1. All of the terms and conditions of this agreement are stated on the front and back sides of this form. There are no other contracts, promises, or understandings, written or spoken, in addition to those stated in this agreement. This agreement cancels and takes the place of any other agreement or understanding between Customer and Dealer before the date written above. When Dealer signs this document, it, together with the other written sale and finance documents, then becomes the complete and only agreement between us.

2. The only important defects I know about in the motor vehicle being traded in to the dealer are:

_____
(If there are no defects, write NONE)

3. I have read the front and back sides of this form and I have received a true copy of it.

4. This contract is not binding upon the Dealer until signed by an authorized representative. Buyer may cancel this contract and receive full refund anytime before receipt of a copy of this contract signed by an authorized Dealer representative by giving written notice of cancellation to the Dealer.

5. The seller of this vehicle (has) (has not) performed a title search for the motor vehicle being sold for purposes of determining the accuracy of the mileage shown on the odometer or for any other purpose. Purchaser acknowledges receipt of this disclosure.

6. The seller discloses that the motor vehicle (has) (has not) been used as a driver training, leased or rented motor vehicle by the last owner or user of the vehicle prior to this sale. Purchaser acknowledges receipt of this ~~...~~

| EXTENDED SERVICE CONTRACT | 1995.00 |
|---|---|
| GAP | 695.00 |
| CUSTOMER PREDELIVER PREP. CHG. | |
| Administrative Fee | 199.50 |
| LIEN FEE | 2.50 |
| SUB TOTAL | 21862.00 |
| TAX | 1257.90 |

| 1. CASH PRICE (INCLUDING ANY ACCESSORIES, SERVICES AND TAXES IMPOSED ON CASH SALE) | 23119.90 | |
|---|---|---|
| 2. CASH DOWN PAYMENT | FACTORY CASH | 500.00 |
| | DEPOSIT ON ORDER | N/A |
| | CASH ON DELIVERY | N/A |
| 3. TRADE-IN | | N/A |
| 4. LESS PAYOFF AMOUNT | | .00 |
| 5. NET DOWN PAYMENT (2 + 4) | | 500.00 |
| 6. UNPAID BALANCE OF CASH PRICE (1- 5) | | 22619.90 |
| 7. TOTAL CASH BALANCE DUE ON DELIVERY | | 22619.90 |

(arbitration paragraph) ...and bind arbitration all claims, disputes, demands, causes of action ... with each other or between any officers, directors, agents, employees of Dealer and Customer that arise out of or relate to: (1) any warranty or work-manship of a vehicle; (2) any work or repair order concerning a vehicle; (3) any sale, lease, repair, or financing agreement relating to a vehicle; (4) breach of contract, misrepresentation, fraud, concealment, conversion, and state and federal statutory or common law claims for unfair and deceptive trade practices against the Dealer or any officers, directors, agents, employees, or assignees of the Dealer; (5) false or misleading advertising; (6) any federal, state or local consumer protection statute, including but not limited to any truth-in-lending, truth-in-leasing, truth-in-financing, and truth-in-advertising statute; (7) monies owed by Customer in connection with the purchase, lease, financing or repair of vehicle; (8) condition of the vehicle; (9) any purchase of insurance; (10) any purchase of any warranty. And (11) the scope and validity of this contract. The final and binding arbitration shall be submitted before JAMS or its successor. The arbitration shall be conducted by one neutral Arbitrator ("Arbitrator") selected from a list of arbitrators provided by JAMS, and shall be governed by the JAMS Comprehensive Arbitration Rules and Procedures in effect at that time. This agreement to arbitrate shall not in any way extend or shorten the applicable legal statutes or limitation. Commencement of an arbitration under this Agreement shall comply with the JAMS Comprehensive Arbitration Rules and Procedures in effect at that time. Nothing in this mutual agreement to arbitrate shall require Dealer to submit to arbitration claims against Customer for claim and delivery, repossession, or injunctive relief, and Dealer's claims for these remedies shall not be strayed pending the outcome of the arbitration. The Arbitrator shall apply the applicable substantive and remedies laws, and may award any remedies allowed by applicable law. The agreement to arbitrate also applies to class action litigation. Nothing in this paragraph shall prohibit or limit the Parties from seeking injunctive relief from a court of competent jurisdiction at any time in lieu of or in addition to arbitration. The Arbitrator cannot and shall not modify any of the provisions of this agreement to arbitrate. The costs associated with an arbitration under this agreement to arbitrate shall be shared equally by Customer and Dealer except each party is responsible for the costs which a party would have been required to bear had the matter been filed in a court. However, the Arbitrator may award attorney's fees and costs to the prevailing party as authorized by law. [Only if not contained within dealer's agreement elsewhere: If any provision of this agreement to arbitrate is held invalid or unenforceable, the remainder of the Agreement which can be given effect without the invalid or unenforceable provision shall continue in full force and effect and shall in no way be impaired or invalidated.] This agreement may be enforced by any Court of competent jurisdiction, and the party seeking enforcement shall be entitled to an award of all costs, fees and expenses, including attorney's fees, to be paid by the party against whom enforcement is ordered. The Parties acknowledge that they have carefully read this Agreement, understand its terms, agreed to be bound by them, and that each has entered into this Agreement knowingly and voluntarily. PLEASE READ CAREFULLY. BY INITIALING THIS PROVISION, YOU ARE GIVING UP YOUR RIGHT TO FILE A LAWSUIT IN A COURT OF LAW AND TO HAVE YOUR MATTER HEARD BY A JUDGE AND/OR JURY. X

| X Norma J. Bush   08/23/2008 | X | ACCEPTED BY MANAGER |
|---|---|---|
| PURCHASER'S SIGNATURE   DATE | CO-PURCHASER'S SIGNATURE   DATE | (DEALER OR AUTHORIZED REPRESENTATIVE) |



EXHIBIT
5

# ⊕ Commerce Bank

**Confidentiality Statement:** The information contained in this facsimile is privileged and confidential information intended for the sole use of the addressee. If you are not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this fax in error, please immediately notify the person listed above, and return the original message to the sender at the address listed above.

**To:** 89073 - Tracy Fay
89073 - Suzuki of Springfiled

**Fax:** 14178909222

**From:** Aimryai Pennington
Commerce Bank

**Date:** 9/3/2008 3:12 PM
**Pages:** 1 of 1 (including this page)
**Subject:**

| Comments: | Customer Name | Reserve Amount | Amount Financed |
|---|---|---|---|
| | BUSH, NORMA | $1,040.00 | $22,619.90 |

9-4-08
#

BUSH   OBReno #1163

## Suzuki of Springfield — PURCHASE ORDER

3310 S. Campbell • Springfield, MO 85807 • Phone: 417.880.8555 • Fax: 417.880.8500

DATE 08/23/2008

PLEASE ENTER MY ORDER FOR THE FOLLOWING

☐ DEMO   ☐ NEW   ☒ USED   ☐ CAR   ☒ TRUCK

| YEAR | MAKE | MODEL | TYPE |
|------|------|-------|------|
| 2001 | CHEVY | 1500 | |

| COLOR | TRIM | MILEAGE |
|-------|------|---------|
| RED | | 57921 |

MR. / MRS. / MS. JOANN LEWIS — PURCHASER'S NAME

9516 CASTILLO — STREET ADDRESS

MULBURY   AR   72947 — CITY / STATE

000-000-0000 — BUS. PHONE / RES. PHONE

COUNTY

SERIAL NO. 1 G C H K 2 9 U 1 1 E 3 2 2 0 0 4

TO BE DELIVERED ON OR ABOUT 08/23/2008

IF PURCHASE OF VEHICLE IS TO BE FINANCED, DISCLOSURE OF THE FINANCE AND RELATED CHARGES WILL BE CONTAINED IN THE RETAIL INSTALLMENT CONTRACT-SECURITY AGREEMENT BETWEEN THE CUSTOMER AND THE LENDING INSTITUTION. THIS CONTRACT IS SUBJECT TO THIRD PARTY FINANCING AND OR LEASE.

BASE MODEL PRICE   16323.00

TRANSPORTATION

THIS SALE AND ALL RELATED DOCUMENTS CONTINGENT UPON 3RD PARTY FINANCIAL APPROVAL PER FOLLOWING TERMS AND CONDITIONS. EQUIPPED AS AGREED UNLESS THIS IS A CASH TRANSACTION OR AN OUTSIDE LIEN.

### TRADE-IN INFORMATION

| YEAR | MAKE | MODEL | MILEAGE |
|------|------|-------|---------|

VEHICLE IDENT NUMBER

BALANCE OWED TO:

ADDRESS   00000-0000

TITLE AT   VERIFIED BY

BALANCE OWED N/A   GOOD UNTIL

RECORD'S NO.

YES   NO   VERIFIED

LIENHOLDER AMERICREDIT   PO BOX 182673

ADDRESS ARLINGTON   TX   76096
CITY   STATE

PURCHASER

TO WHOM IT MAY CONCERN:
I,
TOOK DELIVERY OF A 1500
2001 CHEVY
1GCHK29U11E322004   16323.00

SIGNED:

DLR. REP.:

That Cost Each #

#### CUSTOMER'S CERTIFICATION & DEALER DISCLOSURE
I DO CERTIFY THAT:

1. All of the terms and conditions of this agreement are stated on the front and back sides of this form. There are no other contracts, promises, or understandings, written or spoken, in addition to those stated in this agreement. This agreement cancels and takes the place of any other agreement or understanding between Customer and Dealer before the date written above. When Dealer signs this document, it, together with the other written sale and finance documents, then becomes the complete and only agreement between us.

2. The only important defects I know about in the motor vehicle being traded in to the dealer are: ___ (If there are no defects, write NONE)

3. I have read the front and back sides of this form and I have received a true copy of it.

4. This contract is not binding upon the Dealer until signed by an authorized representative. Buyer may cancel this contract and receive full refund anytime before receipt of a copy of this contract signed by an authorized Dealer representative by giving written notice of cancellation to the Dealer.

5. The seller of this vehicle (has) (has not) performed a title search for the motor vehicle being sold for purposes of determining the accuracy of the mileage shown on the odometer to for any purpose. Purchaser acknowledges receipt of this disclosure.

6. The seller discloses that this motor vehicle (has) (has not) been used as a driver training, leased or rented motor vehicle by the last owner or user of the vehicle prior to this sale. Purchaser acknowledges receipt of this disclosure.

CUSTOMER PRE/DELIVER PREP. CHG.

Administrative Fee   199.50

LIEN FEE   2.50

SUB TOTAL   16525.00

TAX   N/A

| | | |
|---|---|---|
| 1. CASH PRICE (INCLUDING ANY ACCESSORIES, SERVICES AND TAXES IMPOSED ON CASH SALE) | | 16525.00 |
| 2. CASH DOWN PAYMENT | FACTORY CASH | N/A |
| | DEPOSIT ON ORDER | N/A |
| | CASH ON DELIVERY | 1500.00 |
| 3. TRADE-IN | | N/A |
| 4. LESS PAYOFF AMOUNT | | .00 |
| 5. NET DOWN PAYMENT (2 + 4) | | 1500.00 |
| 6. UNPAID BALANCE OF CASH PRICE (1 - 5) | | 15025.00 |
| 7. TOTAL CASH BALANCE DUE ON DELIVERY | | 15025.00 |

Arbitration: It is agreed that the Customer and Dealer ("Parties") shall submit to binding and final arbitration all claims, disputes, demands, causes of action or controversies between each other or between any officers, directors, agents, employees or Dealer and Customer that arise out of or relate to: (1) any warranty or workmanship of a vehicle; (2) any work or repair order concerning a vehicle; (3) any sale, lease, repair, or financing agreement relating to a vehicle; (4) breach of contract, misrepresentation, fraud, concealment, conversion, and state and federal statutory or common law claims for unfair and deceptive trade practices against the Dealer or any officers, directors, agents, employees, or assignees of the Dealer; (5) fated or misleading advertising; (6) any federal, state or local consumer protection statute, including but not limited to any truth-in-lending, truth-in-leasing, truth-in-financing, and truth-in-advertising statute; (7) matters owed by Customer in connection with the purchase, lease, financing or repair of vehicle; (8) condition of the vehicle; (9) any purchase of insurance; (10) any purchase of any warranty. And (11) the scope and validity of this contract. The final and binding arbitration shall be submitted before JAMS or its successor. The arbitration shall be conducted by one neutral Arbitrator ("Arbitrator") selected from a list of arbitrators provided by JAMS, and shall be governed by the JAMS Comprehensive Arbitration Rules and Procedures in effect at that time. This agreement to arbitrate shall not in any way extend or shorten the applicable legal statutes or limitation. Commencement of an arbitration under this Agreement shall comply with the JAMS Comprehensive Arbitration Rules and Procedures in effect at that time. Nothing in this mutual agreement to arbitrate shall require Dealer to submit to arbitration claims against Customer for claim and delivery, repossession, or injunctive relief, and Dealer's claims for these remedies shall not be strayed pending the outcome of the arbitration. The Arbitrator shall apply the applicable substantive and remedies laws, and may award any remedies allowed by applicable law. The agreement to arbitrate also applies to class action litigation. Nothing in this paragraph shall prohibit or limit the Parties from seeking injunctive relief from a court of competent jurisdiction at any time in lieu of or in addition to arbitration. The Arbitrator cannot and shall not modify any of the provisions of this agreement to arbitrate. The costs associated with an arbitration under this agreement to arbitrate shall be shared equally by Customer and Dealer except each party is responsible for the costs which a party would have been required to bear had the matter been filed in a court. However, the Arbitrator may award attorney's fees and costs to the prevailing party as authorized by law. [Only if not contained within dealer's agreement elsewhere: if any provision of this agreement to arbitrate held invalid or unenforceable, the remainder of the Agreement which can be given effect without the invalid or unenforceable provision shall continue in full force and effect and shall in no way be impaired or invalidated.] This agreement may be enforced by any Court of competent jurisdiction, and the party seeking enforcement shall be entitled to an award of all costs, fees and expenses, including attorney's fees, to be paid by the party against whom enforcement is ordered. The Parties acknowledge that they have carefully read this Agreement, understand its terms, agreed to be bound by them, and that each has entered into this Agreement knowingly and voluntarily. PLEASE READ CAREFULLY. BY INITIALING THIS PROVISION, YOU ARE GIVING UP YOUR RIGHT TO FILE A LAWSUIT IN A COURT OF LAW AND TO HAVE YOUR MATTER HEARD BY A JUDGE AND/OR JURY.

X Joann Lewis   08/23/2008
PURCHASER'S SIGNATURE   DATE

X
CO-PURCHASER'S SIGNATURE   DATE

ACCEPTED BY MANAGER

X
(DEALER OR AUTHORIZED REPRESENTATIVE)

www.suzukiofspringfield.com



EXHIBIT
6

# //AMERICREDIT

## Per Funding Disbursement Notification

**Dealer Number: 43174**   **Dealer Name: Suzuki of Springfield**

| Funding Date | Application Number | Customer Last Name | Amount Financed | Acquisition Fee | Assignment Fee | Part. Paid | Part. Split | Other Additions | Other Deductions | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 9/5/2008 | 5LX575320 | Lewis | $15,025.00 | $295.00 | $95.00 | $663.20 | 75% | | $0.00 | |

*01 Chevrolet Silverado # 52M*

\* Other deductions could include, but are not limited to: Florida Doc Stamp, Rate Buy Down.

Depending on your bank's processing timeframes, funds may not appear in your account for 24-48 hours. Funding Adjustment questions or those amounts do not agree with your records, please contact your local credit center.

To avoid funding delays, please forward completed contract packages via overnight courier to the following:

AmeriCredit
FundsNow Department 300
284 State Route 72 North
Reesville, OH 45166

Building Relationships.
Creating Solutions.
That's the AmeriCredit difference.

You have the right to request that we no longer send facsimiles to your fax number. To stop faxes, contact Dealer Services Solutions at (800) 520-0473, or fax us at (817) 302-7102 or e-mail opt-out@americredit.com If you no longer wish to receive faxes from AmeriCredit including, but not limited to, credit decisions, callbacks, stip requests, program changes, amendments, letters and contracts. In your request, please identify the telephone number(s) of the telephone facsimile machine(s) for which you do not want to receive faxes. Failure to comply with your properly made request or invitation to send you faxes. Should you make such a request and at a later date provide us with a new facsimile number and/or express invitation or permission to send you facsimile, we may do so.

This transmission may contain information that is privileged, confidential, and/or exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or use of the information contained herein (including any attachments) is STRICTLY PROHIBITED. If you received this transmission in error, please immediately contact the sender and destroy the material in its entirety, whether in electronic or hard copy format. Thank you.

SUZUKI OF SPRINGFIELD · SPRINGFIELD, MO 65807

| VENDOR NAME | JOANN LEWIS | ISSUED BY 01 | | CHECK NUMBER | 11174 | VENDOR CONTROL NUMBER | 40392 |
| --- | --- | --- | --- | --- | --- | --- | --- |

Copyright 2004 ADP, Inc.

| DATE | INVOICE NO. | AMOUNT | DATE | INVOICE NO. | AMOUNT |
| --- | --- | --- | --- | --- | --- |
| 1100 | 40392 | 450.00 JOANN LEWIS | | | |
| CASH BACK IN DEAL 01 CHEVROLET#322004 | | | | | |
| Entered by 01 | | | | | |
| 1010 | | 450.00- . | | | |



$450 CK back to customer for taxes after deal is funded

I ACCEPT THIS WE OWE WITH THE UNDERSTANDING THAT IT IS VALID FOR ONLY 30 DAYS FROM THE DATE OF
SALE. I ACCEPT THAT I MUST MAKE AN ADANCE APPOINTMENT WITH MY SALES PERSON TO HAVE THIS WORK PERFORMED.
THIS WE OWE WILL BE NULL AND VOID ON THE 31ST DAY AFTER ISSUANCE.

CUSTOMER _____ Joann Lewis _____

DATE _____/_____/_____

APPROVED/MGR _____

| | | | | | |
| --- | --- | --- | --- | --- | --- |
| 8/31/2008 | 11174 | *********450 | 00 | | *********450.00 |
| Four Hundred Fifty DOLLARS and 00 CENTS | | | | | |
| JOANN LEWIS | | | | | |
| 9516 CASTILLO | | | | | |
| MULBURY, AR 72947 | | | | | |
| Memo:CASH BACK IN DEAL | | CONTINUATION | | | |

*Suzuki of Springfield*  **PURCHASE ORDER**   08/25/2008

3310 S. Campbell • Springfield, MO 65807 • Phone: 417.889.6555 • Fax: 417.889.8599

**PLEASE ENTER MY ORDER FOR THE FOLLOWING**

☐ DEMO ☐ NEW ☒ USED ☐ CAR ☐ TRUCK

| YEAR | MAKE | MODEL | TYPE |
|---|---|---|---|
| 2006 | DODGE | CARAVAN | VAN |

| COLOR | TRIM | MILEAGE |
|---|---|---|
| | SE | 36351 |

MR./MRS./MS. JIMMY L PHELAN / GAYLE J PHELAN
PURCHASER'S NAME

STREET ADDRESS: 405 S COLLEGE

MARIONVILLE    MO    65705

LAWRENCE    000-000-0000

SALESMAN: Olinby   TO BE DELIVERED ON OR ABOUT 08/25/2008

SERIAL NO.: 1 D 4 G P 2 4 R 7 6 8 6 9 4 9 5 8

**TRADE-IN**
YEAR 2005 MAKE Dodge MODEL Caravan MILEAGE 54848

VEHICLE IDENT. NUMBER: 1 4 4 G P 4 5 R 2 5 B 2 0 9 7 9 5

BALANCE OWED TO:

ADDRESS: 00000-0000

TITLE AT:

BALANCE OWED: 12980.00    GOOD UNTIL:

RECORD LIEN: YES____ NO____ VERIFIED____

LIEN HOLDER: FRANKLIN CAPITAL CORP
ADDRESS: 47 WEST 200 SOUTH #500
CITY SALT LAKE CITY UT STATE 84101

THIS SALE AND ALL RELATED DOCUMENTS CONTINGENT UPON 3RD PARTY FINANCIAL APPROVAL PER FOLLOWING TERMS AND CONDITIONS. EQUIPPED AS AGREED UNLESS THIS IS A CASH TRANSACTION OR AN OUTSIDE LIEN.

TO WHOM IT MAY CONCERN:
I, _____ TOOK DELIVERY OF A
2006 DODGE CARAVAN  18167.00
1D4GP24R768694958
SIGNED: _____
DLR. REP.: _____

| | | |
|---|---|---|
| Administrative Fee | 199 | 50 |
| LIEN FEE | 2 | 00 |
| SUB TOTAL | | |
| TAX | N/A | |
| 1. CASH PRICE | | |
| FACTORY CASH | N/A | |
| DEPOSIT ON ORDER | N/A | |
| CASH ON DELIVERY | N/A | |
| 3. TRADE-IN | 13200 | 00 |
| 4. LESS PAYOFF AMOUNT | 12980 | 00 | 220.00 |
| 6. NET DOWN PAYMENT | | 220.00 |
| 8. UNPAID BALANCE OF CASH PRICE | | 18149.00 |
| 9. TOTAL CASH BALANCE DUE ON DELIVERY | | |

X _____ 08/25/2008  _____ 08/25/2008
PURCHASER'S SIGNATURE  DATE  CO-PURCHASER'S SIGNATURE  DATE

ACCEPTED _____ (DEALER OR AUTHORIZED REPRESENTATIVE)

**EXHIBIT 7**

Franklin Capital Corporation
47 West 200 South, Suite 500
Salt Lake City, UT 84101
(800) 717-AUTO (2886)

SUZUKI OF SPRINGFIELD
(417) 890-9222

9/4/2008
3:33 PM

## Contract Boarding Sheet

Application#
955536

|  | Applicant 1 | Applicant 2 | Applicant 3 | Applicant 4 |
|---|---|---|---|---|
|  | PHELAN<br>JIMMY | PHELAN<br>GAYLE |  |  |

| | | |
|---|---|---|
| APR | 8.54% | Amount Financed | $18149.00 |
| Payment Amount | $324.16 | Paid To Merchant (+) | $0.00 |
| Term of Contract | 72 | Rate Buy Down (-) | $0.00 |
| Contract Date | 08/25/2008 | Flat Fee (+) | $200.00 |
| First Payment Due | 10/09/2008 | Acquisition Fee (-) | $306.00 |
| | | Document Fee (-) | $60.00 |
| | | First Payment (-) | $0.00 |
| | | Contract Board Date | 09/04/2008 |
| | | Total To Merchant | $17983.00 |

Product Information

USED
1D4GP24R768594958
2006
DODGE
GRAND CARAVAN
MINIVAN 4D
V6 3.3 LITER
36351 MILES

06 CARAVAN
sale

95 Post col
per Shellie @
BCS

## Contract Boarding Sheet

TRADE-05
CARAVAN ACV 7780.00
Purchases for 7790.06
SDF

**SUZUKI OF SPRINGFIELD**
3310 S. CAMPBELL SPRINGFIELD, MO 65807
417-889-6555 PHONE 417-889-8599 FAX

DATE 8/25/08

LIENHOLDER NAME Amer-credit

CUSTOMER NAME Jim & Gayle Phelan

ACCOUNT NUMBER

YEAR 05 MAKE Dodge MODEL Caravan

VIN #

I, Jim & Gayle Phelan. (CUSTOMER)

DO AUTHORIZE _____ (LIENHOLDER)

TO RELEASE THE LIEN ON THE ABOVE STATED VEHICLE AND FORWARD
THE TITLE AND/OR LIEN RELEASE TO SUZUKI OF SPRINGFIELD AT THE
BELOW STATED ADDRESS.

SUZUKI OF SPRINGFIELD
3310S. CAMPBELL
SPRINGFIELD, MO 65807

YOUR PROMPT ATTENTION TO THIS MATTER IS GREATLY
APPRECIATED

CUSTOMER SIGNATURE _____

SUZUKIOFSPRINGFIELD.COM

SUZUKI OF SPRINGFIELD

**SUZUKI OF SPRINGFIELD**
3310 S. CAMPBELL, SPRINGFIELD, MO 65807
(417) 889-6555 · (417) 890-9222 FAX

ACCOUNTING COPY   PAGE 1

| DATE | YEAR | MAKE | MODEL | VIN | STK/CUS | MILES IN | MILES OUT | TAG |
|------|------|------|-------|-----|---------|----------|-----------|-----|
| 08/27/08 | 06 | Dodge | Grand Cara | 1D4GP24R76B694958 | 5228 | 36704 | | |

| SERVICE DATE | NOTIFIED | SVC ADV | PROMISED DATE/TIME | LICENSE | RATE | PAYMENT | INV. DATE |
|---|---|---|---|---|---|---|---|
| | 08/27/08 | 01 | 00:00 | | 85.00 | CO | 08/27/08 |

| R.O. NUMBER | TAX ID | HOME PHONE | BUSINESS PHONE | | |
|---|---|---|---|---|---|
| 1871 | | | | Deep Sea B | 1 |

```
=============================== WAITER ===============================
=========================== USED INVENTORY ==========================
========================= REPAIR LINE 001 ===========================
CUSTOMER EQUEST MISSOURI STATE INSPECTION
INSPECT VEHICLE PER MISSOURI STATE REGULATIONS
Bill Code - US
MVI        MISSOURI STATE INS            04 M A  .40      5.60     12.00
FRONT BRAKE FRONT BRAKE                  04 M A  .50      7.00     42.50
THIRD BRAKE THIRD BRAKE LIGHT            04 M A  .30      4.20     25.50
                                         Total Labor     16.80     80.00
                                    FRONT PAD      1      35.14     49.20
SZ    000BB-SM857               MINI LAMP      2        .32       .44
YY             EIK-921                    Total Parts    35.46     49.64
                                          Total Line     52.26    129.64

SOURCE  ACCOUNT     CONTROL     COST              CREDIT
31      1450        5228                  64
31      5080        1871        1               -80.00
31      5260        1871        35.46          -49.64
Tech# 04 A:1.20      B:         C:              Total:1.20
```

| LABOR | 80.00 | LABOR | | LABOR | | LABOR AMOUNT | |
|---|---|---|---|---|---|---|---|
| PARTS | 49.64 | PARTS | | PARTS | | PARTS AMOUNT | |
| MISC. SALES | | MISC. SALES | | MISC. SALES | | MISC. SALES | |
| MATERIALS | | MATERIALS | | MATERIALS | | MATERIALS | |
| | | | | | | TOTAL CHARGE | |
| DEDUCTIBLE | | DEDUCTIBLE | | DEDUCTIBLE | | DEDUCTIBLE | |
| SALES TAX | | SALES TAX | | SALES TAX | | SALES TAX | |
| OTHER PAY | | | | | | OTHER PAY | |
| INTERNAL | 129.64 | CONTRACTS | | WARRANTY | | CUSTOMER PAY | |

SUZUKI OF SPRINGFIELD · SPRINGFIELD, MO 65807
ISSUED BY 01

| VENDOR NAME JIMMY L PHELAN | | | | CHECK NUMBER 11274 | | VENDOR CONTROL NUMBER 40388 |
|---|---|---|---|---|---|---|
| DATE | INVOICE NO. | AMOUNT | DATE | INVOICE NO. | AMOUNT | |
| 4500 Entered by 01 1010 | | 25.00   REIMBURSE TITLE PENALTY 25.00- JIMMY L PHELAN | | | | |

DETACH AND RETAIN FOR YOUR RECORDS   9/30/2008   TOTAL NET AMOUNT ▶   25.00



SUZUKI OF SPRINGFIELD

01274

Twenty-Five DOLLARS and 00 CENTS

TO THE ORDER OF    JIMMY L PHELAN
405 S COLLEGE
MARIONVILLE, MO 65705

SUZUKI OF SPRINGFIELD

Memo: REIMBURSE TITLE PENALTY

⑈011274⑈ ⑆086518736⑆ 41931213⑈

SUZUKI OF SPRINGFIELD · SPRINGFIELD, MO 65807
ISSUED BY 01

| VENDOR NAME | JIMMY L PHELAN | | CHECK NUMBER | 11399 | VENDOR CONTROL NUMBER | 40388 |

| DATE | INVOICE NO. | AMOUNT | DATE | INVOICE NO. | AMOUNT |
|------|-------------|--------|------|-------------|--------|
| 4500 | | 185.00  GOOD WILL CHECK TO CUST | | | |
| CHECK TO CUSTOMER 05 CARAVAN TRADE VIN#209795 | | | | | |
| Entered by 01 | | | | | |
| 1010 | | 185.00- JIMMY L PHELAN | | | |

DETACH AND RETAIN FOR YOUR RECORDS   10/16/2008   TOTAL NET AMOUNT ▶   185.00



**SUZUKI OF SPRINGFIELD**
3310 S. CAMPBELL, SPRINGFIELD, MO 65807
(417) 889-6555 · (417) 890-8222 FAX

BancorpSouth
BANKLINE 1-888-797-7711

80-1873 883
883

| DATE | CHECK NUMBER | | AMOUNT OF CHECK |
|------|--------------|--|-----------------|
| 10/16/2008 | 11399 | **********185*****00** | **********185.00 |

One Hundred Eighty-Five DOLLARS and 00 CENTS

SUZUKI OF SPRINGFIELD

TO THE ORDER OF
JIMMY L PHELAN
405 S COLLEGE
MARION, MO 65705

**NON-NEGOTIABLE**

NON NEGOTIABLE-FILE COPY

SUZUKI OF SPRINGFIELD · SPRINGFIELD, MO 65807
ISSUED BY 01

| VENDOR NAME | JIMMY L PHELAN | | | | CHECK NUMBER 11109 | | VENDOR CONTROL NUMBER 40388 |
|---|---|---|---|---|---|---|---|
| DATE | INVOICE NO. | AMOUNT | | DATE | INVOICE NO. | | AMOUNT |
| 2050 40388 | | 241.20 JIMMY L PHELAN | | | | | |
| DIFFERENCE DUE ON TRADE PAYOFF TO AMERICREDIT 2005 DODGE CAR | | | | | | | |
| AVAN | | | | | | | |
| Entered by 01 | | 241.20- JIMMY L PHELAN | | | | | |
| 1010 | | | | | | | |
| | | | | 9/11/2008 | | | 241.20 |
| 9/11/2008 | 11109 | **********241 | | 20 | | | **********241.20 |

Two Hundred Forty-One DOLLARS and 20 CENTS

JIMMY L PHELAN
405 S COLLEGE
MARIONVILLE, MO 65705

Memo: DIFF DUE ON TRADE PAYOFF          CONTINUATION

## Suzuki of Springfield    PURCHASE ORDER

3310 S. Campbell • Springfield, MO 65807 • Phone: 417.888.8555 • Fax: 417.888.8500

DATE  08/27/2008

**PLEASE ENTER MY ORDER FOR THE FOLLOWING**

☐ DEMO   ☐ NEW   ☐ USED   ☐ CAR   ☒ TRUCK

| YEAR | MAKE | MODEL | TYPE |
|---|---|---|---|
| 2008 | SUZUKI | SX4 | |

| COLOR | TRIM | MILEAGE |
|---|---|---|
| RED | | 12 |

PURCHASER'S NAME  CHRISTOPHER RAKE   SHANNON RAKE

STREET ADDRESS  116 ELIZABETH

CITY  HUNTSVILLE   STATE  AR   72740

SALESMAN

TO BE DELIVERED ON OR ABOUT  08/17/2008

BUS. PHONE  471-738-5281

SERIAL NO.  J S 2 Y C 4 1 2 3 8 5 1 0 3 7 1 2

IF PURCHASE OF VEHICLE IS TO BE FINANCED, DISCLOSURE OF THE FINANCE AND RELATED CHARGES WILL BE CONTAINED IN THE RETAIL INSTALLMENT CONTRACT-SECURITY AGREEMENT BETWEEN THE CUSTOMER AND THE LENDING INSTITUTION. THIS CONTRACT IS SUBJECT TO THIRD PARTY FINANCING AND OR LEASE.

**TRADE-IN INFORMATION**

| YEAR | MAKE | MODEL | MILEAGE |
|---|---|---|---|
| 2006 | Kia | Sephia | |

VEHICLE IDENT. NO.  1 1 Y B 8 0 1 2 4 2 5

BALANCE OWED TO:

ADDRESS  00000-0000

TITLE #:

BALANCE OWED  950.00   GOOD UNTIL

RECORDED IN

YES ☐   NO ☐   VERIFIED

LIENHOLDER  CPS, INC.

ADDRESS  P.O. BOX 57071

CITY  IRVINE   STATE  CA   92619

PURCHASER

BASE MODEL PRICE  18912.00

TRANSPORTATION

OPT?  THIS SALE AND ALL RELATED DOCUMENTS CONTINGENT UPON 3RD PARTY FINANCIAL APPROVAL PER FOLLOWING TERMS AND CONDITIONS. EQUIPPED AS AGREED UNLESS THIS IS A CASH TRANSACTION OR AN OUTSIDE LIEN.

TO WHOM IT MAY CONCERN:
I,
TOOK DELIVERY OF A
2008 SUZUKI   SX4
JS2YC41238510712   18912.00

SIGNED

DLR. REP.:

Trade Guard Code #

### CUSTOMER'S CERTIFICATION & DEALER DISCLOSURE
**I DO CERTIFY THAT:**

1. All of the terms and conditions of this agreement are stated on the front and back sides of this form. There are no other contracts, promises, or understandings, written or spoken, in addition to those stated in this agreement. This agreement cancels and takes the place of any other agreement or understanding between Customer and Dealer before the date written above. When Dealer signs this document, it, together with the other written sale and finance documents, then becomes the complete and only agreement between us.

2. The only important defects I know about in the motor vehicle being traded in to the dealer are:

(If there are no defects, write NONE)

3. I have read the front and back sides of this form and I have received a true copy of it.

4. This contract is not binding upon the Dealer until signed by an authorized representative. Buyer may cancel this contract and receive full refund anytime before receipt of a copy of this contract signed by an authorized Dealer representative by giving written notice of cancellation to the Dealer.

5. The seller of this vehicle (has) (has not) performed a title search for the motor vehicle being sold for purposes of determining the accuracy of the mileage shown on the odometer or for any other purposes. Purchaser acknowledges receipt of this disclosure.

6. The seller discloses that this motor vehicle (has) (has not) been used as a driver training, leased or rented motor vehicle by the last owner or user of the vehicle prior to this sale. Purchaser acknowledges receipt of this disclosure.

CUSTOMER PAID/DLR/DLR PREP. CHG.

Administrative Fee   199.50

LIEN FEE   2.50

SUB TOTAL   18912.00

TAX   N/A

| 1. CASH PRICE INCLUSIVE ANY ACCESSORIES, SERVICES AND TAXES IMPOSED ON CASH SALE | 19114.00 |
|---|---|
| 2. CASH DOWN PAYMENT | FACTORY CASH | 1500.00 |
| | DEPOSIT ON ORDER | N/A |
| | CASH ON DELIVERY | 500.00 |
| 3. TRADE-IN | | 950.00 |
| 4. LESS PAYOFF AMOUNT | | .00 |
| 5. NET DOWN PAYMENT (2 + 4) | | 2000.00 |
| 6. UNPAID BALANCE OF CASH PRICE (1- 5) | | 17114.00 |
| 7. TOTAL CASH BALANCE DUE ON DELIVERY | | |

Arbitration: It is agreed that the Customer and Dealer ("Parties") shall submit to binding and final arbitration all claims, disputes, demands, causes of action or controversies between each other or between any officers, directors, agents, employees of Dealer and Customer that arise out of or relate to: (1) any warranty or work-mansh of a vehicle; (2) any work or repair order concerning a vehicle; (3) any sale, lease, repair, or financing agreement relating to a vehicle; (4) breach of contract, misrepresentation, fraud, concealment, conversion, and state and federal statutory or common law claims for unfair and deceptive trade practices against the Dealer or any officers, directors, agents, employees, or assignees of the Dealer; (5) false or misleading advertising; (6) any federal, state or local consumer protection statute, including but not limited to any truth-in-lending, truth-in-leasing, truth-in-financing, and truth-in-advertising statute; (7) monies owed by Customer in connection with the purchase, lease, financing or repair of vehicle; (8) condition of the vehicle; (9) any purchase of insurance; (10) any purchase of any warranty. And (11) the scope and validity of this contract. The final and binding arbitration shall be submitted before JAMS or its successor. The arbitration shall be conducted by one neutral Arbitrator ("Arbitrator") selected from a list of arbitrators provided by JAMS, and shall be governed by the JAMS Comprehensive Arbitration Rules and Procedures in effect at that time. This agreement to arbitrate shall not in any way extend or shorten the applicable legal statutes or limitation. Commencement of an arbitration under this Agreement shall comply with the JAMS Comprehensive Arbitration Rules and Procedures in effect at that time. Nothing in this mutual agreement to arbitrate shall require Dealer to submit to arbitration claims against Customer for claim and delivery, repossession, or injunctive relief, and Dealer's claims for these remedies shall not be stayed pending the outcome of the arbitration. The Arbitrator shall apply the applicable substantive and remedies laws, and may award any remedies allowed by applicable law. The Agreement to arbitrate also applies to class action litigation. Nothing in this paragraph shall prohibit or limit the Parties from seeking injunctive relief from a court of competent jurisdiction at any time in lieu of or in addition to arbitration. The Arbitrator cannot and shall not modify any of the provisions of this agreement to arbitrate. The costs associated with an arbitration under this agreement to arbitrate shall be shared equally by Customer and Dealer except each party is responsible for the costs which a party would have been required to bear had the matter been filed in a court. However, the Arbitrator may award attorney's fees and costs to the prevailing party as authorized by law. [Only if not contained within the parties' agreement elsewhere; if any provision of this agreement to arbitrate held invalid or unenforceable, the remainder of the Agreement which can be given effect without the invalid or unenforceable provision shall continue in full force and effect and shall in no way be impaired or invalidated.] This agreement may be enforced by any Court of competent jurisdiction, and the party seeking enforcement shall be entitled to an award of all costs, fees and expenses, including attorneys fees, to be paid by the party against whom enforcement is ordered. The Parties acknowledge that they have carefully read this Agreement, understand its terms, agreed to be bound by them, and that each has entered into this Agreement knowingly and voluntarily. PLEASE READ CAREFULLY. BY INITIALING THIS PROVISION, YOU ARE GIVING UP YOUR RIGHT TO FILE A LAWSUIT IN A COURT OF LAW AND TO HAVE YOUR MATTER HEARD BY A JUDGE AND/OR JURY. X

PURCHASER'S SIGNATURE   DATE  08/17/2008   CO-PURCHASER'S SIGNATURE   DATE  08/17/

ACCEPTED BY   DON MANAGER   (DEALER OR AUTHORIZED REPRESENTATIVE)

www.suzukiofspringfield.com



EXHIBIT

8



BancorpSouth Bank
WALNUT LAWN
Customer Receipt 09/22/2008 11:17
Process date 09/22/2008

Seq # 00014

533⑈0000⑈ 4193⑈213⑈

CONSUMER PORTFOLIO SERVICES, INC.                                    262043

| DR. NUMBER | YC. NUMBER | | | | DISCOUNT TAKEN | NET CHECK AMOUNT |
|---|---|---|---|---|---|---|

ACCOUNT
0032405627

CONSUMER PORTFOLIO SERVICES, INC.
LOAN DISBURSEMENT ACCOUNT
16355 LAGUNA CANYON ROAD
IRVINE, CA 92618
(949) 753-6800  FAX (949) 753-6805

CHECK DATE    CONTROL NUMBER

9/15/08    0262043

*********** FIFTEEN THOUSAND SEVEN HUNDRED FIFTY TWO DOLLARS & 17 CENTS *

SUZUKI OF SPRINGFIELD
3310 SOUTH CAMPBELL
SPRINGFIELD       MO 65807

⑈262043⑈ ⑆122242843⑆ 748005899⑈



```
lLNUT LAWN .
ustomer Receipt  09/04/2008 08:14
rocess date      09/04/2008
lr ID   10 Opr Id 21692   Seq # 0801
       Deposit to Comm. Checking
ccount Number:        1213
nount:     $500.00

   Thank you for banking with us!

*********    INFOLINE    ***********
24-Hour Account Information by Phone *
       1-888-797-7711              *
*** "The One Number in Banking"  ****
```



NOTICE TO CUSTOMERS
THE PURCHASE OF AN INDEMNITY BOND WILL BE REQUIRED
BEFORE ANY OFFICIAL CHECK OF THIS BANK WILL BE REPLACED
OR REFUNDED IN THE EVENT IT IS LOST, MISPLACED OR STOLEN.

**ARVEST**
**BANK**
P.O. Box 799
Lowel, AR 72745

1415614

81-87/829
11533621

REMITTER  Shannon Rake
OF 300

DATE  August 27, 2008

PAY TO THE

PURCHASER'S RECEIPT - RETAIN FOR YOUR RECORDS

NOTICE TO CUSTOMERS
THE PURCHASE OF AN INDEMNITY BOND WILL BE REQUIRED
BEFORE ANY OFFICIAL CHECK OF THIS BANK WILL BE REPLACED
OR REFUNDED IN THE EVENT IT IS LOST, MISPLACED OR STOLEN.

**ARVEST**
**BANK**
P.O. Box 799
Lowel, AR 72745

1415614

81-87/829
11533621

REMITTER  Shannon Rake
OF 300

August 27, 2008

PAYABLE TO  Suzuki of Springfield

NOT NEGOTIABLE

500.00

PAY EXACTLY $500 DOL 00 cts

MEMORANDUM

**CASHIER'S CHECK**

FOR

SUZUKI OF S. ...INGFIELD
3318 S. CAMPBELL
SPRINGFIELD, MO 65807
(417-890-7300)

DATE: 8-29-08

LIENHOLDER NAME: Auto Master

CUSTOMER NAME: Christopher Rake

ACCOUNT NUMBER:

YEAR/MAKE: 2000  Kia  Sephia

VIN#: KNAFB121Y5861425

I, Christopher Rake, DO AUTHORIZE

*Auto Master
LIENHOLDER

TO RELEASE THE LIEN ON THE ABOVE STATED VEHICLE AND FORWARD
THE TITLE AND/OR LIEN RELEASE TO SUZUKI OF SPRINGFIELD AT THE
BELOW STATED ADDRESS:
SUZUKI OF SPRINGFIELD
3318 S. CAMPBELL
SPRINGFIELD, MO 65807

YOUR PROMPT ATTENTION TO THIS MATTER IS GREATLY APPRECIATED.

CUSTOMER SIGNATURE

950.00
2050
40398

# AMERICAN SUZUKI MOTOR CORPORATION
## EFT BASE REPORT
EFT Date:
Current as of: SEPT 2008

Suzuki of Springfield
3310 S. Campbell
Springfield, MO 65807

| District: D04 | |
|---|---|
| RGM: | John Frantz | 847-885-9598 |
| DSM: | Forrest Walsby | 636-795-4067 |
| DSPM: | Bill Hocker | 636-448-3008 |

page 1

The date of your deposit may deviate by as much as 3 or 4 days. Please match the amount.

| Purchase Date | Registration Date | VIN | Amount | Sale Type | Program | Category | Record Type | Dealer | EFT Date |
|---|---|---|---|---|---|---|---|---|---|
| 082708 | | | | R | AUG08 CUSTOMER CASH1 | 2008 SX4 BASE SEDAN | BD | 424374 | 9/3/2008 |
| 063008 | | JS2YC412385103712 | $1,000.00 | R | AUG08 CUSTOMER CASH1 | 2008 SX4 SPORT CONV | BD | 424374 | 9/3/2008 |
| | | | | R | AUG08 CUSTOMER CASH1 | 2008 SX4 5DR AWD CNV | BD | 424374 | 9/3/2008 |
| TOTAL | | | $35,750.00 | | | | | | |

1165
1166
1025
1088

posted 9-8 per statement

POSTED 908013

**Suzuki of Springfield**   PURCHASE ORDER

3310 S. Campbell • Springfield, MO 65807 • Phone: 417.889.8565 • Fax: 417.889.8566

DATE 08/28/2008

PLEASE ENTER MY ORDER FOR THE FOLLOWING

☐ DEMO   ☐ NEW   ☐ USED   ☐ CAR   ☑ TRUCK

| YEAR | MAKE | MODEL | TYPE |
|------|------|-------|------|
| 2008 | SUZUKI | G. VITARA | |

| COLOR | MILEAGE |
|-------|---------|
| BLACK | 21 |

MR. CHRISTOPHER RAKE
MRS. SHANNON RAKE

116 ELIZABETH
STREET ADDRESS

HUNTSVILLE    AR    72740
CITY          STATE    ZIP

471-738-5281

SERIAL NO.
J|S|3|T|E|9|4|1|2|8|1|0|3|6|9|1

TO BE DELIVERED ON OR ABOUT 08/28/2008

IF PURCHASE OF VEHICLE IS TO BE FINANCED, DISCLOSURE OF THE FINANCE AND RELATED CHARGES WILL BE CONTAINED IN THE RETAIL INSTALLMENT CONTRACT-SECURITY AGREEMENT BETWEEN THE CUSTOMER AND THE LENDING INSTITUTION. THIS CONTRACT IS SUBJECT TO THIRD PARTY FINANCING AND OR LEASE.

BASE CASH PRICE    21000.00

TRANSPORTATION

QTY   THIS SALE AND ALL RELATED DOCUMENTS CONTINGENT UPON 3RD PARTY FINANCIAL APPROVAL PER FOLLOWING TERMS AND CONDITIONS. EQUIPPED AS AGREED UNLESS THIS IS A CASH TRANSACTION OR AN OUTSIDE LIEN.

**TRADE-IN INFORMATION**

| YEAR | MAKE | MODEL | MILEAGE |
|------|------|-------|---------|
| 1997 | Ford | F150 | 187122 |

VEHICLE SERIAL NUMBER
2 | F T | D | X | 1 | 7 | 6 | 2 | V | C | A | 6 | 1 | 0 | 1 | 0

BALANCE OWED TO:

TO WHOM IT MAY CONCERN:
I,
TOOK DELIVERY OF A
2008 SUZUKI    G. VITARA
JS3TE941281103691        21000.00
SIGNED

ADDRESS

BALANCE OWED           VERIFIED BY
N/A                    GOOD UNTIL

RECORD LIEN

DLR. REP:

YES ____ NO ____   VERIFIED

LIENHOLDER   JP MORGAN CHASE BANK NA
ADDRESS      PO BOX 901098
CITY         FT WORTH    TX    STATE    76101

PURCHASER

**CUSTOMER'S CERTIFICATION & DEALER DISCLOSURE**
I DO CERTIFY THAT:

1. All of the terms and conditions of this agreement are stated on the front and back sides of this form. There are no other contracts, promises, or understandings, written or spoken, in addition to those stated in this agreement. This agreement cancels and takes the place of any other agreement or understanding between Customer and Dealer before the date written above. When Dealer signs this document, it, together with the other written sale and finance documents, then becomes the complete and only agreement between us.

2. The only important defects I know about in the motor vehicle being traded in the dealer are:
_____ (If there are no defects, write NONE)

3. I have read the front and back sides of this form and I have received a true copy of it.

4. This contract is not binding upon the Dealer until signed by an authorized representative. Buyer may cancel this contract and receive full refund anytime before receipt of a copy of this contract signed by an authorized Dealer representative by giving written notice of cancellation to the Dealer.

5. The seller of this vehicle (has) (has not) performed a title search for the motor vehicle being sold for purposes of determining the accuracy of the mileage shown on the odometer or for any other purpose. Purchaser acknowledges receipt of this disclosure.

6. The seller discloses that this motor vehicle (has) (has not) been used as a driver training, leased or rented motor vehicle by the last owner or user of the vehicle prior to this sale. Purchaser acknowledges receipt of this disclosure.

GAP                        600.00

CUSTOMER PAID/DRIVER PREP. CHG.

Administrative Fee

LIEN FEE                   199.50

SUB TOTAL

TAX                        N/A

1. CASH PRICE (INCLUDING ANY ACCESSORIES, SERVICES AND ITEMS IMPOSED ON CASH SALE)

| FACTORY CASH | 4000.00 |
|---|---|
| DEPOSIT ON ORDER | .00 |
| CASH ON DELIVERY | N/A |

2. TRADE-IN           2000.00

3. LESS PAYOFF AMOUNT    N/A

4. NET DOWN PAYMENT (2 + 4)   2000.00

5. UNPAID BALANCE OF CASH PRICE (1-5)   6000.00

                                15802.00

6. TOTAL CASH BALANCE / DUE ON DELIVERY

*(handwritten notes: — SOF ROL ; → Never had trade)*

Arbitration: It is agreed that the Customer and Dealer ("Parties") shall submit to binding and final arbitration all claims, disputes, demands, causes of action or controversies between each other or between any officers, directors, agents, employees of Dealer and Customer that arise out of or relate to: (1) any warranty or workmanship of a vehicle; (2) any work or repair order concerning a vehicle; (3) any sale, lease, repair, or financing agreement relating to a vehicle; (4) breach of contract, misrepresentation, fraud, concealment, conversion, and state and federal statutory or common law claims for unfair and deceptive trade practices against the Dealer or any officers, directors, agents, employees, or assignees of the Dealer; (5) false or misleading advertising; (6) any federal, state or local consumer protection statute, including but not limited to any truth-in-lending, truth-in-leasing, truth-in-financing, and truth-in-advertising statute; (7) monies owed by Customer in connection with the purchase, lease, financing or repair of vehicle; (8) condition of the vehicle; (9) any purchase of insurance; (10) any purchase of any warranty. And (11) the scope and validity of this contract. The final and binding arbitration shall be submitted before JAMS or its successor. The arbitration shall be conducted by one neutral Arbitrator ("Arbitrator") selected from a list of arbitrators provided by JAMS, and shall be governed by the JAMS Comprehensive Arbitration Rules and Procedures in effect at that time. This agreement to arbitrate shall not in any way extend or shorten the applicable legal statutes or limitation. Commencement of an arbitration under this Agreement shall comply with the JAMS Comprehensive Arbitration Rules and Procedures in effect at that time. Nothing in this mutual agreement to arbitrate shall require Dealer to submit to arbitration claims against Customer for claim and delivery, repossession, or injunctive relief, and Dealer's claims for those remedies shall not be stayed pending the outcome of the arbitration. The Arbitrator shall apply the applicable substantive and remedies laws, and may award any remedies allowed by applicable law. The agreement to arbitrate also applies to class action litigation. Nothing in this paragraph shall prohibit or limit the Parties from seeking injunctive relief from a court of competent jurisdiction at any time in lieu of or in addition to arbitration. The Arbitrator cannot and shall not modify any of the provisions of this agreement to arbitrate. The more associated with an arbitration under this agreement to arbitrate shall be shared equally by Customer and Dealer except each party is responsible for the costs which a party would have been required to bear had the matter been filed in a court. However, the Arbitrator may award attorney's fees and costs to the prevailing party as authorized by law. Only if not contained within dealer's agreement elsewhere. If any provision of this agreement to arbitrate held invalid or unenforceable, the remainder of the Agreement which can be given effect without the invalid or unenforceable provision shall continue in full force and effect and shall in no way be impaired or invalidated.) This agreement may be enforced by any Court of competent jurisdiction, and the party seeking enforcement shall be entitled to an award of all costs, fees and expenses, including attorneys fees to be incurred by the party against whom enforcement is ordered. The Parties acknowledge that they have carefully read this Agreement, understand its terms, and agreed to be bound by them, and that each has entered into the Agreement knowingly and voluntarily. PLEASE READ CAREFULLY. BY INITIALING THIS PROVISION, YOU ARE GIVING UP YOUR RIGHT TO FILE A LAWSUIT IN A COURT OF LAW AND TO HAVE YOUR MATTER HEARD BY A JUDGE AND/OR JURY. X

_____   08/28/2008      _____   08/28/2008    ACCEPTED BY: _____
PURCHASER'S SIGNATURE   DATE   CO-PURCHASER'S SIGNATURE   DATE   (DEALER OR AUTHORIZED REPRESENTATIVE)

www.suzukiofspringfield.com

EXHIBIT
9

# CHASE

## Funding Disbursement Notification

Chase Auto Finance
"Financing provided by JPMorgan Chase Bank, N.A."
ST LOUIS CUSTOM FINANCE
540 STATE ROUTE 72 NORTH · SUIT
REESVILLE, OH 45166

https://www.voisys.com/webleads/LeadDetail.aspx?id=2363633

ACH
Phone (877) 827-8714
Fax (877) 827-8717

9/5/2008

Dealer ID: 558328   Dealer Name: SUZUKI OF SPRINGFIELD

| Book Date | Account Number | Customer Name | Amount Financed | Dealer Reserve | Discount | Additions | Deletions | Total Proceeds |
|---|---|---|---|---|---|---|---|---|
| 9/5/2008 | 423004??42 | CHRISTOPHER RAKE | $16,802.00 | $762.52 | $495.00 | $0.00 | $0.00 | $15,307.00 |

### Detail for Additions and Deletions from Proceeds

Total Proceeds $15,307.00

Add Remarks

Contact: Office Manager
FAX: 1-417-889-8599

**TO AVOID FUNDING DELAYS, PLEASE SEND ALL CUSTOM FINANCE CONTRACTS TO THE ADDRESS LISTED ABOVE.**

This transmission may contain information that is privileged, confidential and/or exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of the information contained herein (including any reliance thereon) is STRICTLY PROHIBITED. If your registered this transmission in error, please immediately contact the sender and destroy the material in its entirety, whether in electronic or hard copy format. Thank you.

9/5/2008

*Suzuki of Springfield*   **PURCHASE ORDER**

3310 S. Campbell • Springfield, MO 65807 • Phone: 417.889.6555 • Fax 417.889.8599

DATE 09/09/2008

**PLEASE ENTER MY ORDER FOR THE FOLLOWING**

☐ DEMO   ☐ NEW   ☒ USED   ☐ CAR   ☒ XX

| YEAR | MAKE | | TYPE |
|---|---|---|---|
| 2007 | Toyota | FJ Cruiser | Wagon |

| COLOR | TRIM | MILEAGE |
|---|---|---|
| | Base | 20650 |

SALESMAN   TO BE DELIVERED ON OR ABOUT 09/09/2008

SERIAL NO. J T E B U 1 1 F 6 7 0 0 1 5 4 1 9

MR DOMINIQUE TAMREECE MITCHELL
2109 HONEYSUCKLE LANE
FAYETTEVILLE AR 72703
479-856-8689

BASE MODEL PRICE 20500 00

IF PURCHASE OF VEHICLE IS TO BE FINANCED, DISCLOSURE OF THE FINANCE AND RELATED CHARGES WILL BE CONTAINED IN THE RETAIL INSTALLMENT CONTRACT-SECURITY AGREEMENT BETWEEN THE CUSTOMER AND THE LENDING INSTITUTION. THIS CONTRACT IS SUBJECT TO THIRD PARTY FINANCING AND OR LEASE.

THIS SALE AND ALL RELATED DOCUMENTS CONTINGENT UPON 3RD PARTY FINANCIAL APPROVAL PER FOLLOWING TERMS AND CONDITIONS. EQUIPPED AS AGREED UNLESS THIS IS A CASH TRANSACTION OR AN OUTSIDE LIEN.

TO WHOM IT MAY CONCERN:
I,
TOOK DELIVERY OF A
2007 Toyota FJ Cruiser 20500.00
JTEBU11F670015419
SIGNED

**TRADE-IN INFORMATION**
BALANCE OWED TO N/A

LIENHOLDER NATIONAL AUTO FINANCE
ADDRESS 12850 WEST GRAN BAY PARKWAY
CITY JACKSONVILLE FL 32258

Administrative Fee 199 50
LIEN FEE 2 50
SUB TOTAL 20702.00
TAX N/A
CASH PRICE 20702.00

FACTORY CASH N/A
DEPOSIT ON ORDER N/A
CASH ON DELIVERY N/A
TRADE-IN N/A
LESS PAYOFF AMOUNT .00
NET DOWN PAYMENT 20702.00
UNPAID BALANCE OF CASH PRICE 20702.00
TOTAL CASH BALANCE 20702.00

ACCEPTED BY MANAGER

PURCHASER'S SIGNATURE   09/09/2008

**EXHIBIT 10**

nartCash, 09/26/2008 71393-001

**Subject:** SmartCash, 09/26/2008 71393-001
**From:** smartcash@mail5.gmgwh.net
**Date:** Fri, 26 Sep 2008 23:04:20 -0400 (EDT)
**To:** SALES@THEAUTOSHOPPE.COM

NOTICE: This message may contain privileged or otherwise confidential information and
is intended for the sole use of the intended recipient(s).  Any unauthorized use,
disclosure, distribution, or copying of this message, including any attachments, is
prohibited.  If you are not the intended recipient of this message, please immediately
delete the message and any attachments without using, disclosing, distributing, or
copying the contents.

### Daily Record
For 09/26/2008
215-71393- 001 SUZUKI OF SPRINGFIELD
SUZUKI OF SPRINGFIELD

Go to Summary

Report Status:  FINAL

**OTH-ACH**

**Contract Proceeds**

| User ID | VIN Yr/Mk/Mdl | Description | App # Customer Name | Amount |
|---------|---------------|-------------|---------------------|--------|
| | | | | |
| Branch | | | | $20,000.00 |
| | | | **Subtotal** | **$45,920.00** |

posted 9-29
per Shelly

**SUMMARY SECTION**

20500
@60b -1270y

Go to Detail

**OTH-ACH - Funds Impact Dealer Bank Account**

Dealer Bank Account

9/29/2008 9:08 AM

SUZUKI OF SPRINGFIELD · SPRINGFIELD, MO 65807

| VENDOR NAME | | | ISSUED BY 01 | | CHECK NUMBER | 12386 | VENDOR CONTROL NUMBER | 40420 |
|---|---|---|---|---|---|---|---|---|
| DOMINIQUE TAMREECE MITCHELL | | | | | | | | |

| DATE | INVOICE NO. | AMOUNT | DATE | INVOICE NO. | AMOUNT |
|---|---|---|---|---|---|
| 2020    5267 | | 1230.00  MITCHELL | | | |
| Entered by 01 | | | | | |
| 1010 | | 1230.00- DOMINIQUE TAMREECE MITC | | | |

DETACH AND RETAIN FOR YOUR RECORDS    9/25/2008    TOTAL NET AMOUNT ▶    1,230.00



THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND ON WHITE PAPER

12386

**SUZUKI OF SPRINGFIELD**
3310 S. CAMPBELL, SPRINGFIELD, MO 65807
(417) 889-6555 · (417) 880-9232 FAX

BancorpSouth®
N*OLINE 1-888-797-7711

80-1873 863
865

| DATE | CHECK NUMBER | PAY THIS AMOUNT | | | AMOUNT OF CHECK |
|---|---|---|---|---|---|
| 9/25/2008 | 12386 | ********1,230 | DOLLARS 00 | CENTS | ********1,230.00 |

One Thousand Two Hundred Thirty DOLLARS and 00 CENTS

SUZUKI OF SPRINGFIELD

TO THE ORDER OF
DOMINIQUE TAMREECE MITCHELL
2109 HONEYSUCKLE LANE
FAYETTEVILLE, AR 72703

Memo SALES TAX IN DEAL 07 FJ

SECURITY FEATURES INCLUDED. DETAILS ON BACK.

⑈"0l3386"⑈ ⑈⑈08651823⑈⑈ ⑈l0317l3l⑈⑈

*Suzuki of Springfield*   PURCHASE ORDER

1310 S. Campbell • Springfield, MO 65807 • Phone: 417.889.6555 • Fax: 417.869.8509

PLEASE ENTER MY ORDER FOR THE FOLLOWING

DATE 09/10/2008

☐ DEMO  ☐ NEW  ☑ USED  ☐ CAR  ☑ TRUCK

| YEAR | MAKE | MODEL | TYPE |
|---|---|---|---|
| 2000 | Dodge | Caravan | Wagon |

JACK NEAL — PURCHASER'S NAME

469 MCKNIGHT — STREET ADDRESS

WEST FORK — CITY   AR — STATE   72774

479-839-8364 — BUS. PHONE / RES. PHONE

COLOR   MILEAGE 42151

SERIAL NO. 2 B 4 G P 2 5 3 1 Y R 6 2 6 7 1 4

TO BE DELIVERED ON OR ABOUT 09/10/2008

IF PURCHASE OF VEHICLE IS TO BE FINANCED, DISCLOSURE OF THE FINANCE AND RELATED CHARGES WILL BE CONTAINED IN THE RETAIL INSTALLMENT CONTRACT-SECURITY AGREEMENT BETWEEN THE CUSTOMER AND THE LENDING INSTITUTION. THIS CONTRACT IS SUBJECT TO THIRD PARTY FINANCING AND OR LEASE.

BASE MODEL PRICE   5000.00
TRANSPORTATION
OPT

THIS SALE AND ALL RELATED DOCUMENTS CONTINGENT UPON 3RD PARTY FINANCIAL APPROVAL PER FOLLOWING TERMS AND CONDITIONS.       EQUIPPED AS AGREED UNLESS THIS IS A CASH TRANSACTION OR AN OUTSIDE LIEN.

TO WHOM IT MAY CONCERN:

TOOK DELIVERY OF A
2000 Dodge    Caravan       5000.00
2B4GP2531YR626714

SIGNED:

DLR. REP:

**TRADE-IN INFORMATION**

| YEAR | MAKE | MODEL | MILEAGE |
|---|---|---|---|

VEHICLE IDENT NUMBER

BALANCE OWED TO:

ADDRESS

TITLE #                  VERIFIED BY

BALANCE OWED   N/A        GOOD UNTIL

BOOKED LIEN

RES.                  NO.              VERIFIED

LIENHOLDER   COMMERCE BANK
ADDRESS   PO BOX 413658
CITY   KANSAS CITY        MO        STATE   64141
LIENHOLDER

**CUSTOMER'S CERTIFICATION & DEALER DISCLOSURE**
I DO CERTIFY THAT:

1. All of the terms and conditions of this agreement are stated on the front and back sides of this form. There are no other contracts, promises, or understandings, written or spoken, in addition to those stated in this agreement. This agreement cancels and takes the place of any other agreement or understanding between Customer and Dealer before this sale written above. When Dealer signs this document, it, together with the other written sale and finance documents, then becomes the complete and only agreement between us.

2. The only important defects I know about in the motor vehicle being traded in to the dealer are:

(If there are no defects, write NONE)

3. I have read the front and back sides of this form and I have received a true copy of it.

4. This contract is not binding upon the Dealer until signed by an authorized representative. Buyer may cancel this contract and receive full refund anytime before receipt of a copy of this contract signed by an authorized Dealer representative by giving written notice of cancellation to the Dealer.

5. The seller of this vehicle (has) (has not) performed a title search for the motor vehicle being sold for purposes of determining the accuracy of the mileage shown on the odometer or for any other purposes. Purchaser acknowledges receipt of this disclosure.

6. The seller discloses that this motor vehicle (has) (has not) been used as a driver training, leased or rented motor vehicle by the last owner or user of the vehicle prior to this sale. Purchaser acknowledges receipt of this disclosure.

CUSTOMER PREDELIVER PREP. CHG.
Administrative Fee   199.50
LIEN FEE         2.50
SUB TOTAL   5202.00
TAX   N/A

1. CASH PRICE (INCLUDING ANY ACCESSORIES, SERVICES AND TAXES IMPOSED ON CASH SALE.)   5202.00

| | FACTORY CASH | N/A |
|---|---|---|
| CASH DOWN PAYMENT | DEPOSIT ON ORDER | N/A |
| | CASH ON DELIVERY | N/A |

2. TRADE-IN   N/A
3. LESS PAYOFF AMOUNT   .00
4. NET DOWN PAYMENT (2 + 4)   N/A
5. UNPAID BALANCE OF CASH PRICE (1- 5)   5202.00
6. TOTAL CASH BALANCE DUE ON DELIVERY   5202.00

Arbitration: It is agreed that the Customer and Dealer ("Parties") shall submit to binding and final arbitration all claims, disputes, demands, causes of action or controversies between each other or between any officers, directors, agents, employees of Dealer and Customer that arise out of or relate to: (1) any warranty or workmanship of a vehicle; (2) any work or repair order concerning a vehicle; (3) any sale, lease, repair, or financing agreement relating to a vehicle; (4) breach of contract, misrepresentation, fraud, concealment, conversion, and state and federal statutory or common law claims for unfair and deceptive trade practices against the Dealer or any officers, directors, agents, employees, or assignees of the Dealer; (5) false or misleading advertising; (6) any federal, state or local consumer protection statute, including but not limited to any truth-in-lending, truth-in-leasing, truth-in-financing, and truth-in-advertising statute; (7) monies owed by Customer in connection with the purchase, lease, financing or repair of vehicle; (8) condition of the vehicle; (9) any purchase of insurance; (10) any purchase of any warranty. And (11) the scope and validity of this contract. The final and binding arbitration shall be submitted before JAMS or its successor. The arbitration shall be conducted by one neutral Arbitrator ("Arbitrator") selected from a list of arbitrators provided by JAMS, and shall be governed by the JAMS Comprehensive Arbitration Rules and Procedures in effect at that time. This agreement to arbitrate shall not in any way extend or shorten the applicable legal statutes or limitation. Commencement of an arbitration under this Agreement shall comply with the JAMS Comprehensive Arbitration Rules and Procedures in effect at that time. Nothing in this mutual agreement to arbitrate shall require Dealer to submit to arbitration claims against Customer for claims and delivery, repossession, or similar items, and may award any remedies allowed by applicable law. The agreement to arbitrate also applies to class action litigation. Nothing in this paragraph shall prohibit or limit the Parties from seeking injunctive relief from a court of competent jurisdiction at any time in lieu of or in addition to arbitration. The Arbitrator cannot and shall not modify any of the provisions of this agreement to arbitrate. The costs associated with an arbitration under this agreement to arbitrate shall be shared equally by Customer and Dealer except each party is responsible for the costs which a party would have been required to bear had the matter been filed in a court. However, the Arbitrator may award attorney's fees and costs to the prevailing party as authorized by law. (Only if not contained within dealer's agreement elsewhere; If any provision of this agreement to arbitrate is held invalid or unenforceable, the remainder of the Agreement which can be given effect without the invalid or unenforceable provision shall continue in full force and effect and shall in no way be impaired or invalidated.) This agreement may be enforced by any Court of competent jurisdiction, and the party seeking enforcement shall be entitled to an award of all costs, fees and expenses, including attorney's fees, to be paid by the party against whom enforcement is ordered. The Parties acknowledge that they have carefully read this Agreement, understand its terms, agreed to be bound by them, and that has entered into this Agreement knowingly and voluntarily. PLEASE READ CAREFULLY. BY INITIALING THIS PROVISION, YOU ARE GIVING UP YOUR RIGHT TO FILE A LAWSUIT IN A COURT OF LAW AND TO HAVE YOUR MATTER HEARD BY A JUDGE AND/OR JURY. X

PURCHASER'S SIGNATURE   09/10/2008   DATE   CO-PURCHASER'S SIGNATURE   DATE

ACCEPTED BY MANAGER

DEALER OR AUTHORIZED REPRESENTATIVE

www.suzukiofspringfield.com



EXHIBIT
11

# Commerce Bank

**Confidentiality Statement:** The information contained in this facsimile is privileged and confidential information intended for the sole use of the addressee. If you are not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this fax in error, please immediately notify the person listed above, and return the original message to the sender at the address listed above.

**To:**   89073 - Tracy Fay
          89073 - Suzuki of Springfiled
**Fax:**  14178909222

**From:** Aimryal Pennington
          Commerce Bank

**Date:**    9/25/2008 1:51 PM
**Pages:**   1 of 1 (including this page)
**Subject:**

**Comments:**  Customer Name   Reserve Amount   Amount Financed
NEAL, JACK  $0.00  $5,202.00

Dealer Total  $5,202.00

*40449*

*9.26 - posted per Shelly*

*00 CARAVAN #528)*

*Vin — 626714*

*CIT 5202~*

# Suzuki of Springfield — PURCHASE ORDER

DATE 09/17/2008

3310 S. Campbell • Springfield, MO 65807 • Phone: 417.889.8555 • Fax: 417.889.8599

PLEASE ENTER MY ORDER FOR THE FOLLOWING  XX

☐ DEMO  ☐ NEW  ☐ USED  ☐ CAR  ☒ TRUCK

| YEAR | MAKE | MODEL | STOCK |
|------|------|-------|-------|
| 2008 | Jeep | Grand Cher | UC111 |

COLOR Laredo   MILEAGE 26406

MR. ANHOK LAIBRIJ
MRS.

PURCHASER'S NAME

2698 HAMPSHIRE AVE
STREET ADDRESS

SPRINGDALE   AR   72764
CITY   STATE   ZIP

479-290-7060  479-313-3763

TO BE DELIVERED ON OR ABOUT 09/17/2008

SERIAL NO. 1 J 8 G S 4 8 K 0 8 C 1 7 1 7 6

THIS SALE AND ALL RELATED DOCUMENTS CONTINGENT UPON 3RD PARTY FINANCIAL APPROVAL PER FOLLOWING TERMS AND CONDITIONS.  EQUIPPED AS AGREED UNLESS THIS IS A CASH TRANSACTION OR AN OUTSIDE LIEN.

TO WHOM IT MAY CONCERN:
I,
TOOK DELIVERY OF A
2008 Jeep   Grand Cher   24500.00
1J8GS48K08C137176
SIGNED

DLR. REP:

LIENHOLDER  EMPIRE BANK
ADDRESS  P.O. BOX 3397
CITY  SPRINGFIELD   MO   STATE 65890

| | |
|---|---|
| EXTENDED SERVICE CONTRACT | 1952.00 |
| SAFE GAP | 599.00 |
| Administrative Fee | 199.50 |
| LIEN FEE | 2.50 |
| SUB TOTAL | 27253.00 |
| TAX | N/A |
| CASH PRICE | 27253.00 |

| | | |
|---|---|---|
| FACTORY CASH | N/A | |
| DEPOSIT ON ORDER | N/A | |
| CASH ON DELIVERY | 5000.00 | |
| TRADE-IN | N/A | |
| LESS PAYOFF AMOUNT | N/A | .00 |
| NET DOWN PAYMENT | | 5000.00 |
| UNPAID BALANCE OF CASH PRICE | | 22253.00 |
| TOTAL CASH BALANCE DUE ON DELIVERY | | 22253.00 |

09/17/2008



EXHIBIT 12

www.suzukiofsprinfield.com

WALNUT LAWN
Customer Receipt  09/22/2008 11:22
Process date      09/22/2008
Tlr ID    '5 Opr Id 21701   Seq # 00022'
         Deposit to Comm. Checking
Account Number:    ■1213
Amount:   $22,250.50


    Thank you for banking with us!


**********   INFOLINE   ***********
* 24-Hour Account Information by Phone *
*          1-888-797-7711            *
****  "The One Number in Banking"  ****





SUZUKI OF SPRINGFIELD · SPRINGFIELD, MO 65807
ISSUED BY 01

| VENDOR NAME | ANROK LAIBWIJ | | | | CHECK NUMBER | 11175 | VENDOR CONTROL NUMBER | 40480 |
|---|---|---|---|---|---|---|---|---|
| **DATE** | **INVOICE NO.** | **AMOUNT** | | | **DATE** | **INVOICE NO.** | **AMOUNT** | |

1100    40480                    2512.00   ANROK LAIBWIJ
CASH BACK IN DEAL FOR SALES TAX 08 JEEP #127176
SOF
Entered by 01
  1010                           2512.00- ANROK LAIBWIJ

# SUZUKI
# WE OWE

| NAME | ~~Anrok Laibwij~~ | YR. | ~~~~ | MAKE | ~~~~ | MODEL | ~~Grand Cherokee~~ |
|---|---|---|---|---|---|---|---|
| ADDRESS | ~~Hampshire Ave~~ | VIN # | | | | | |
| CITY | ~~dale~~ STATE ~~~~ ZIP ~~~~ | | | | | | |
| PHONE | ~~~~ | SALESPERSON | ~~~~ | | | | |

DATE SOLD

| QTY. | NAME OF ITEM | ESTIMATE $ |
|---|---|---|
| | Check for taxes | |

I hereby accept this WE OWE with the understanding that it is valid for only 30 DAYS from the date of issuance, and that I must make an advance appointment with my salesperson to have this work performed. This WE OWE will be null and void on the 31st day after issuance.

DATE ~~~~
APPROVED ~~~~

CUSTOMER                                    MANAGER

| 9/19/2008 | 11175 | *******2,512 | 00 | *******2,512.00 |
|---|---|---|---|---|

Two Thousand Five Hundred Twelve DOLLARS and 00 CENTS

ANROK LAIBWIJ
2698 HAMPSHIRE AVE
SPRINGDALE, AR 72764

Memo:CASH BACK FOR TAXES

CONTINUATION