IN THE CIRCUIT COURT OF WASHINGTON COUNTY, ARKANSAS

JARED DAVIS and J2R, LLC PLAINTIFFS

vs. Case No. CV 2009-261-4

MARK HUNTER DEFENDANT

vs.

ARVEST BANK CLAIMANT IN INTERVENTION

**COMPLAINT IN INTERVENTION**

COMES NOW Arvest Bank ("Arvest"), by and through its attorneys, of Hood & Stacy, P.A., and for its Complaint in Intervention, states and alleges as follows:

1. This Court has jurisdiction over the parties hereto, and venue is proper in this Court.

2. Upon information and belief, the Plaintiff, Jared Davis, and the Defendant, Mark Hunter, entered into an agreement ("Agreement") whereby the Defendant, Mark Hunter would loan money to the Plaintiff, Jared Davis, for the purchase of numerous used vehicles from Tim Hurd Lincoln Mercury d/b/a/ Suzuki of Fayetteville ("Tim Hurd"). J2R, LLC purchased Tim Hurd's used car inventory using, in part, the funds Jared Davis borrowed from the Defendant. Jared Davis is a member of J2R, LLC.

3. Upon information and belief, on or about August 8, 2008, the Defendant, Mark Hunter, received titles to approximately twenty (20) vehicles from Tim Hurd in exchange for his execution and delivery of a cashier's check in the amount of $325,000.00 to General Motors Acceptance Corporation ("GMAC"), pursuant to the Agreement.

4. Upon information and belief, one of the titles received by the Defendant, Mark Hunter, pursuant to the above Agreement, was the title for a ***2008 FORD F350 DRW, VIN NO. 1FTWW33R18EA60243*** (the "Vehicle").

5. Upon information and belief, on or about September 18, 2008, the Plaintiff, Jared Davis, without his mother, Alexa M. Davis' permission or knowledge, executed and delivered to Tim Hurd a Retail Installment Contract and Security Agreement (the "Note"), in the name of Alexa M. Davis, whereby she purportedly borrowed from and promised to pay $37,162.00, with interest accruing at 7.74% per anum, payable in monthly payments of $648.80 beginning November 2, 2008. A copy of the Note is attached hereto and incorporated herein as Exhibit "A".

6. Upon information and belief, to secure the indebtedness in the Note, the Plaintiff, Jared Davis, without his mother, Alexa M. Davis' permission or knowledge, simultaneously executed and delivered to Tim Hurd a security interest in the Vehicle.

7. The Note was later assigned to Arvest. Alexa M. Davis failed and refused to make the monthly payments despite demand by Plaintiff. There remains an unpaid balance on the Note due and owing to Arvest of $39,177.01 as of May 7, 2009.

8. Alexa M. David did not have knowledge of the Note until receipt of demand letters from Arvest. At no time did Alexa M. Davis have possession of the Vehicle. Alexa M. Davis has not affirmed or ratified the Note since learning of its existance. *See* Affidavit of Alexa M. Davis, attached hereto as Exhibit "B".

9. Upon information and belief, Jared Davis received possession of the Vehicle from Tim Hurd at some time between August 2008 and September 2008.

10. Upon information and belief, the Defendant, Mark Hunter, currently has possession of the Vehicle, after repossession of the Vehicle from Jared Davis.

11. On February 26, 2009, the Plaintiff, Jared Davis and J2R, LLC, filed their First Amended Complaint against the Defendant, Mark Hunter, alleging breach of contract, usury and replevin of vehicles retained by the Defendant pursuant to the Agreement. Arvest was not included as a party to this lawsuit and did not have knowledge of the pending litigation until June 2009. In May 2009, Arvest obtained counsel to pursue collection on the Note after learning the Defendant, Mark Hunter, submitted a claim to his insurance company that he owned the Vehicle and the Vehicle had been stolen.

12. As of May 7, 2009, there remains a balance of $39,177.01 on the Note, and the vehicle is in the possession of the Defendant, Mark Hunter. The Plaintiff, Jared Davis, is seeking possession of vehicles obtained by the Defendant, Mark Hunter, in connection to the Agreement.

13. As of May 7, 2009, there remains a balance of $39,177.01 on the Note, and the vehicle is in the possession of the Defendant, Mark Hunter.

WHEREFORE, Arvest Bank respectfully requests that this Court grant Arvest Bank judgment against the Plaintiff, Jared Davis, in an amount of $39,177.01 with interest accruing at 7.74% per anum from May 7, 2009; plus the costs incurred by Arvest Bank as a result of this action; a reasonable attorney's fee; pre-judgment interest, post-judgment interest on the entire amount. Arvest Bank further requests that this Court determine the interest of the parties in the Vehicle, and, if appropriate, grant Arvest Bank possession of the Vehicle for sale, with the proceeds to be applied towards the satisfaction of the above judgment against Jared Davis; and any other relief that this Court deems proper.

Respectfully submitted,

BURTON E. STACY, JR. ABA #94196
SARA E. HECK ABA#2008236
HOOD & STACY, P.A.
216 North Main
Bentonville, AR 72712
(479) 273-3377; (479) 273-3419

ATTORNEYS FOR ARVEST BANK

CERTIFICATE OF MAILING

I, Sara E. Heck, do hereby certify that on the 8th day of October 2009, I mailed a true and correct copy of the above and foregoing instrument, postage prepaid thereon, to:

Don A. Taylor
Colin M. Johnson
Davis, Clark, Butt, Carithers & Taylor, PLC
P.O. Box 1688
Fayetteville, AR 72702

Sara E. Heck

3987120 BNT

| RETAIL INSTALLMENT CONTRACT AND SECURITY AGREEMENT | Seller | Buyer |
| --- | --- | --- |
| No. Date 09/18/2008 | TIM HURD LINCOLN MERCURY, INC 2395 N. COLLEGE FAYETTEVILLE AR 72703 "We" and "us" mean the Seller above, its successors and assigns | ALEXA M. DAVIS 1002 CHUKAR CIRCLE MIDLAND, TX 79706 "You" and "your" mean each Buyer above, and guarantor, jointly and individually |

**SALE:** You agree to purchase from us, on a time basis, subject to the terms and conditions of this contract and security agreement (Contract), the Motor Vehicle (Vehicle) and services described below.

Description of Motor Vehicle Purchased — Year 2008; Make Ford; Model F350 DRW; VIN: 1FTWW33R18EA40243; Lic. No./Year; ☐ New ☐ Used; Other

Description of Trade-In N/A

**SECURITY:** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Vehicle and all accessions to the Vehicle, together called Property. You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract.

**PROMISE TO PAY AND PAYMENT TERMS:** You promise to pay us the principal amount of $ 37162.00 plus finance charges accruing on the unpaid balance at the rate of 7.71% per year from today's date until paid in full. Finance charges accrue on a DAY TO day basis. You agree to pay this Contract according to the payment schedule and late charge provisions shown in the TRUTH IN LENDING DISCLOSURES. You also agree to pay any additional amounts according to the terms and conditions of this Contract.

☐ **SERVICE AND HANDLING FEE:** You agree to pay a service and handling fee of $ 129.00. **A service and handling fee is not an official fee. A service and handling fee is not required by law but may be charged to the customer for performing services and handling documents relating to the closing of a sale or lease. The service and handling fee may result in profit to the dealer. The service and handling fee does not include payment for the preparation of legal documents. This notice is required by law.**

☐ **PREPAYMENT PENALTY:** Upon voluntary prepayment in full, or acceleration after default, we will charge and you agree to pay a prepayment penalty in the amount of $ N/A

**DOWN PAYMENT:** You also agree to pay, or apply to the Cash Price, on or before today's date, any cash, rebate and net trade-in value described in the ITEMIZATION OF AMOUNT FINANCED. ☐ You agree to make deferred payments as part of the cash down payment as reflected in your Payment Schedule.

**TRUTH IN LENDING DISCLOSURES**

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate | FINANCE CHARGE The dollar amount the credit will cost you | AMOUNT FINANCED The amount of credit provided to you or on your behalf | TOTAL OF PAYMENTS The amount you will have paid when you have made all scheduled payments | TOTAL SALE PRICE The total cost of your purchase on credit, including your down payment of $ 6000.00 |
| --- | --- | --- | --- | --- |
| 7.71 % | $ 9551.60 | $ 37162.00 | $ 46713.60 | $ 52713.60 |

**Payment Schedule:** Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due |
| --- | --- | --- |
| 72 | 648.80 | MONTHLY, BEGINNING 11/02/2008 |

**Security:** You are giving a security interest in the Motor Vehicle purchased.
☐ **Late Charge:** If a payment is more than 10 days late, you will be charged 5 % OF THE UNPAID AMOUNT OF AN INSTALLMENT UP TO $25.00
**Prepayment:** If you pay off this Contract early, you ☐ may ☐ will not have to pay a penalty.
**Contract Provisions:** You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

**CREDIT INSURANCE:** Credit life, credit disability (accident and health), and any other insurance coverage quoted below, are not required to obtain credit and we will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below ONLY the coverages you have chosen to purchase.

Credit Life: Insured ______
☐ Single ☐ Joint Prem. $ N/A Term ______
Credit Disability: Insured ______
☐ Single ☐ Joint Prem. $ N/A Term ______

Your signature below means you want (only) the insurance coverage(s) quoted above. If none are quoted, you have declined any coverages we offered.

Buyer ______ dob ______ Buyer ______ dob

**PROPERTY INSURANCE:** You must insure the Property securing this Contract. You may purchase or provide the insurance through any insurance company reasonably acceptable to us. The collision coverage deductible may not exceed $ N/A. If you get insurance from or through us you will pay $ N/A for ______ of coverage.

This premium is calculated as follows:
☐ $ N/A Deductible, Collision Coverage $ N/A
☐ $ N/A Deductible, Comprehensive Cov. $ N/A
☐ Fire-Theft and Combined Additional Coverage $ N/A
☐ ______ $ N/A

☐ **SERVICE CONTRACT:** With your purchase of the Vehicle, you agree to purchase a Service Contract to cover N/A ______ This Service Contract will be in effect for ______

**ASSIGNMENT:** This Contract and Security Agreement is assigned to ARVEST BANK the Assignee, phone ______. This assignment is made ☐ under the terms of a separate agreement ☐ under the terms of the ASSIGNMENT BY SELLER on page 2. ☐ This assignment is made with recourse.
Seller By TIM HURD LINCOLN MERCURY Date 09/18/2008
[signature]

**ITEMIZATION OF AMOUNT FINANCED**

| | |
| --- | --- |
| Vehicle Price (incl. sales tax of $ N/A) | $ 43001.00 |
| Service Contract, Paid to ______ | $ N/A |
| Cash Price | $ 43001.00 |
| Manufacturer's Rebate $ N/A | |
| Cash Down Payment $ 6000.00 | |
| Deferred Down Payment $ N/A | |
| a. Total Cash/Rebate Down | $ 6000.00 |
| b. Trade-in Allowance $ N/A | |
| c. Less: Amount owing $ N/A | |
| Paid to (includes f) ______ | |
| d. Net Trade-in (b minus c) | $ .00 |
| e. Net Cash/Trade-in (a plus d) | $ 6000.00 |
| f. Amount to finance line c (if c is negative) | $ N/A |
| Down Payment (e, disclose as $0 if negative) | $ 6000.00 |
| Unpaid Balance of Cash Price | $ 37001.00 |
| Paid to Public Officials - Filing Fees | $ N/A |
| Insurance Premiums* | $ N/A |
| Service and Handling Fee, Paid to Seller | $ 129.00 |
| To ______ | $ N/A |
| To VSI | $ 32.00 |
| To ______ | $ N/A |
| Total Other Charges/Amounts Pd. to Others | $ 161.00 |
| Less: Prepaid Finance Charges | $ N/A |
| Amount Financed | $ 37162.00 |

*We may retain or receive a portion of this amount.

**NOTICE TO BUYER**

(1) Do not sign this agreement before you read it or if it contains any blank spaces. (2) You are entitled to a completely filled-in copy of this agreement. (3) Under the law, you have the right to pay off in advance the full amount due and under certain conditions to obtain a partial refund of the finance charge.

BY SIGNING BELOW BUYER AGREES TO THE TERMS ON PAGES 1 AND 2 OF THIS CONTRACT AND ACKNOWLEDGES RECEIPT OF A COPY OF THIS CONTRACT.

Buyer Signature [signature: Alyx M. Davis] Date 09/18/2008
Signature ______ Date ______
Seller By [signature]

Exhibit A

## ADDITIONAL TERMS OF THIS CONTRACT AND SECURITY AGREEMENT

**GENERAL TERMS:** You have been given the opportunity to purchase the Vehicle and described services for the Cash Price or the Total Sale Price. The Total Sale Price is the total price of the Vehicle and any services if you buy them over time. You agreed to purchase the items over time. The Total Sale Price shown in the TRUTH IN LENDING DISCLOSURES assumes that all payments will be made as scheduled. The actual amount you will pay may be more or less depending on your payment record.

We do not intend to charge or collect, and you do not agree to pay, any finance charge or fee, that is more than the maximum amount permitted for this sale by state or federal law. If you pay a finance charge or fee that is contrary to this provision, we will, instead, apply it first to reduce the principal balance, and when the principal has been paid in full, refund it to you.

You understand and agree that we (or our affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that you buy through us or our affiliate.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract.

**PREPAYMENT:** You may prepay this Contract in full or in part at any time. Any partial prepayment will not excuse any later scheduled payments until you pay in full.

A refund of any prepaid, unearned insurance premiums may be obtained from us or from the insurance company named in your policy or certificate of insurance.

**OWNERSHIP AND DUTIES TOWARD PROPERTY:** By giving us a security interest in the Property, you represent and agree to the following:

A. You will defend our interests in the Property against claims made by anyone else. You will do whatever is necessary to keep our claim to the Property ahead of the claim of anyone else.

B. The security interest you are giving us in the Property comes ahead of the claim of any other of your general or secured creditors. You agree to sign any additional documents or provide us with any additional information we may require to keep our claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.

C. You will keep the Property in your possession in good condition and repair. You will use the Property for its intended and lawful purposes. Unless otherwise agreed in writing, the Property will be located at your address listed on page 1 of this Contract.

D. You will not attempt to sell the Property (unless it is properly identified inventory) or otherwise transfer any rights in the Property to anyone else, without our prior written consent.

E. You will pay all taxes and assessments on the Property as they become due.

F. You will notify us of any loss or damage to the Property. You will provide us reasonable access to the Property for the purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

**DEFAULT:** You will be in default on this Contract if any one of the following occurs (except as prohibited by law):

A. You fail to perform any obligation that you have undertaken in this Contract.

B. We, in good faith, believe that you cannot, or will not, pay or perform the obligations you have agreed to in this Contract.

If you default, you agree to pay our costs for collecting amounts owing, including, without limitation, court costs, reasonable attorneys' fees, and fees for repossession, repair, storage and sale of the Property securing this Contract.

If an event of default occurs as to any one of you, we may exercise our remedies against any or all of you.

**REMEDIES:** If you are in default on this Contract, we have all of the remedies provided by law and this Contract.

A. We may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, finance charges and all other agreed charges.

B. We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so. We are not required to do so. Any amount we pay will be added to the amount you owe us and will be due immediately. This amount will earn finance charges from the date paid at the rate described in the PROMISE TO PAY AND PAYMENT TERMS section until paid in full.

C. We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.

D. We may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises. We may then sell the Property and apply what we receive as provided by law to our reasonable expenses and then toward your obligations.

E. Except when prohibited by law, we may sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

By choosing any one or more of these remedies, we do not waive our right to later use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law).

You agree that, subject to your right to recover such property, we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above.

**CREDITOR-PLACED INSURANCE NOTICE: You are giving us a security interest in the Property described in the Security section. You are required to maintain insurance on the Property to protect our interest until all debts secured by this Contract are paid. If you fail to provide evidence of insurance on the Property to us, we may place insurance on the Property and you will be responsible to pay for the costs of that creditor-placed insurance. At our option, the method of billing for creditor-placed insurance charges may create a balloon payment or extend the maturity date of the debts secured by this Contract.**

You agree to buy property insurance on the Property protecting against loss and physical damage and subject to a maximum deductible amount indicated in the PROPERTY INSURANCE section, or as we will otherwise require. You will name us as loss payee on any such policy. In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. You may purchase or provide the insurance through any insurance company reasonably acceptable to us. You will keep the insurance in full force and effect until this Contract is paid in full.

If you fail to obtain or maintain this insurance, or name us as a loss payee, we may obtain insurance to protect our interest in the Property. This insurance may include coverages not required of you. This insurance may be written by a company other than one you would choose. It may be written at a rate higher than a rate you could obtain if you purchased the property insurance required by this Contract. We will add the premium for this insurance to the amount you owe us. Any amount we pay will be due immediately. This amount will earn finance charges from the date paid at the rate described in the PROMISE TO PAY AND PAYMENT TERMS section until paid in full.

A refund of any prepaid, unearned insurance premiums may be obtained from us or from the insurance company named in your policy or certificate of insurance, and in the event of default, we may apply any refund to the unpaid balance.

**OBLIGATIONS INDEPENDENT:** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:

A. You must pay this Contract even if someone else has also signed it.

B. We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.

C. We may release any security and you will still be obligated to pay this Contract.

D. If we give up any of our rights, it will not affect your duty to pay this Contract.

E. If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**WARRANTY:** Warranty information is provided to you separately.

**WAIVER: To the extent permitted by law, you agree to give up your rights to require us to do certain things. We are not required to: (1) demand payment of amounts due; (2) give notice that amounts due have not been paid, or have not been paid in the appropriate amount, time or manner; or, (3) give notice that we intend to make, or are making, this Contract immediately due.**

### THIRD PARTY AGREEMENT

By signing below you agree to give us a security interest in the Property described in the SALE section. You also agree to the terms of this Contract, including the WAIVER section above, except that you will not be liable for the payments it requires. Your interest in the Property may be used to satisfy the Buyer's obligation. You agree that we may renew, extend, change this Contract, or release any party or property without releasing you from this Contract. We may take these steps without notice or demand upon you.

**You acknowledge receipt of a completed copy of this Contract.**

Signature ______________________ Date ____________

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**IF YOU ARE BUYING A USED VEHICLE, THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.**

### ASSIGNMENT BY SELLER

Seller sells and assigns this Retail Installment Contract and Security Agreement (Contract) to the Assignee, its successors and assigns, including all its rights, title and interest in this Contract, and any guarantee executed in connection with this Contract. Seller gives Assignee full power, either in its own name or in Seller's name, to take all legal or other actions which Seller could have taken under this Contract. (SEPARATE AGREEMENT: If the Assignment is made "under the terms of a separate agreement" as indicated on page 1, the terms of the assignment are described in a separate writing(s) and not as provided below.)

Seller warrants:

A. This Contract represents a sale by Seller to Buyer on a time price basis and not on a cash basis.

B. The statements contained in this Contract are true and correct.

C. The down payment was made by the Buyer in the manner stated on page 1 of this Contract and, except for the application of any manufacturer's rebate, no part of the down payment was loaned or paid to the Buyer by Seller or Seller's representatives.

D. This sale was completed in accordance with all applicable federal and state laws and regulations.

E. This Contract is valid and enforceable in accordance with its terms.

F. The names and signatures on this Contract are not forged, fictitious or assumed, and are true and correct.

G. This Contract is vested in the Seller free of all liens, is not subject to any claims or defenses of the Buyer, and may be sold or assigned by the Seller.

H. A completely filled in copy of this Contract was delivered to the Buyer at the time of execution.

I. The Vehicle has been delivered to the Buyer in good condition and has been accepted by Buyer.

J. Seller has or will perfect a security interest in the Property in favor of the Assignee.

If any of these warranties is breached or untrue, Seller will, upon Assignee's demand, purchase this Contract from Assignee. The purchase shall be in cash in the amount of the unpaid balance (including finance charges) plus the costs and expenses of Assignee, including attorneys' fees.

Seller will indemnify Assignee for any loss sustained by it because of judicial set-off or as the result of a recovery made against Assignee as a result of a claim or defense Buyer has against Seller.

Seller waives notice of the acceptance of this Assignment, notice of non-payment or non performance and notice of any other remedies available to Assignee. Assignee may, without notice to Seller, and without affecting the liability of Seller under this Assignment, compound or release any rights against, and grant extensions of time for payment to be made, to Buyer and any other person obligated under this Contract.

UNLESS OTHERWISE INDICATED ON PAGE 1, THIS ASSIGNMENT IS WITHOUT RECOURSE.

WITH RECOURSE: If the Assignment is made "with recourse" as indicated on page 1, Assignee takes this Assignment with certain rights of recourse against Seller. Seller agrees that if the Buyer defaults on any obligation of payment or performance under this Contract, Seller will, upon demand, repurchase this Contract for the amount of the unpaid balance, including finance charges, due at that time.

AFFIDAVIT

STATE OF TEXAS )
) SS
COUNTY OF MIDLAND )

ALEXA M. DAVIS, of lawful age, being first duly sworn, upon oath alleges and states as follows:

1. I am a resident of Midland, Midland County Texas. I have personal knowledge of the matters set forth in this Affidavit.

2. I have never applied for credit with Arvest Bank. I have never executed a promissory note in favor of Arvest Bank, nor authorized any other person or entity to execute a promissory note in my name and in favor of Arvest Bank.

3. I specifically did not execute the Credit Application and Retail Installment Contract and Security Agreement dated September 18, 2008, in the amount of $37,162.00, as attached hereto as Exhibit "A." I had no knowledge of this document until Arvest sent me a demand letter for payment in the mail.

4. I have never bought a vehicle from Tim Hurd Lincoln Mercury, Inc.

5. My son, Jared Davis, without my permission, executed the Credit Application and Retail Installment Contract and Security Agreement, attached hereto as Exhibit "A," to purchase a 2008 Ford F350, VIN No. 1FTWW33R18EA60243, from Tim Hurd Lincoln Mercury, Inc.

6. In addition to the above described documents, my son, Jared Davis, also executed other loan documents that I did not authorize to purchase vehicles.

7. At no time did I ever have possession of the 2008 Ford F350, VIN No. 1FTWW33R18EA60243.

Exhibit B

8. At no time have I ever ratified or affirmed the Retail Installment Contract and Security Agreement dated September 18, 2008, in the amount of $37,162.00, attached hereto as Exhibit "A."

9. All sworn by me, Alexa M. Davis, pursuant to personal knowledge of the facts surrounding the matters set forth in this Affidavit.

DATED this 17 day of June, 2009.

Alexa M. Davis
Alexa M. Davis

Subscribed and sworn to before me by Alexa M. Davis, and personally known to me to be Alexa M. Davis, on this 17th day of June, 2009.

Tana Lynn Jolly
Notary Public

My commission expires:
8-4-11

TANA LYNN JOLLY
NOTARY PUBLIC
STATE OF TEXAS
EXPIRES
08-04-2011

IN THE CIRCUIT COURT OF WASHINGTON COUNTY, ARKANSAS

JARED DAVIS and J2R, LLC — PLAINTIFFS

vs. — Case No. CV 2009-261-4

MARK HUNTER — DEFENDANT

vs.

ARVEST BANK — CLAIMANT IN INTERVENTION

2009 OCT 21 AM 10:55

CERTIFICATE OF MAILING

I, Sara E. Heck, do hereby certify that on the 15th day of October 2009, I mailed a true and correct copy of the Complaint in Intervention, postage prepaid thereon, to:

Jared Davis
511 W. Shadow Grove Ln.
Richmond, TX 77406

Richard Conforti, Jr.
Registered Agent for J2R, LLC
2395 North College Ave.
Fayetteville, AR 72703

Sara E. Heck